(No. 46966.—

THE PEOPLE *ex rel.* FRANK A. KIRK, Director of the Department of Local Government Affairs, Petitioner, v. GEORGE W. LINDBERG, Comptroller, Respondent.

*Opinion filed Sept. 27, 1974.—Modified on denial of rehearing Nov. 26, 1974.*

William J. Scott, Attorney General, of Springfield (Samuel W. Witwer, Special Assistant Attorney General, and Robert M. Rogers, William R. Wallin, and J. Calvin Bostian, Assistant Attorneys General, of counsel), for petitioner.

Leslie N. Jones, of Springfield (Philip B. Kurland, and Alan L. Unikel, of counsel), for respondent.

Patrick J. Cadigan, and Gillespie, Burke & Gillespie, of Springfield, for *amicus curiae* Cecil A. Partee.

James J. Costello, of Urbana, for *amicus curiae* Board of Trustees of the University of Illinois.

James L. Fletcher, and Richard E. Favoriti, of Burditt and Calkins, of Chicago, and Jeffrey W. Kane and Dale R. Turner, of Springfield, for *amicus curiae* President of the Senate, Illinois General Assembly.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

This is an original *mandamus* action brought by Frank A. Kirk, the Director of the Department of Local Government Affairs, to compel the respondent, George W. Lindberg, the Comptroller of the State of Illinois, to honor a voucher drawn upon a designated State fund. The motion for leave to file the original petition for *mandamus* was filed in this court on August 30, 1974. Leave was granted on September 5, 1974, a briefing schedule was

fixed, and the matter was set for oral argument on September 20, 1974. Thereafter the petition was amended, briefs were filed by the parties and by certain *amici curiae,* and oral argument was had. A motion to dismiss has been filed to eliminate the possibility of factual issues.

The amended petition alleged that the respondent refused to honor the voucher and to issue the warrants for which it called for the following reasons:

"a. The General Assembly has not made an appropriation for the expenditure of the funds drawn upon by said voucher; said funds are 'public funds' within the meaning of the provisions of that part of section 2(b) of article VIII of the Illinois Constitution of 1970 which reads:

'(b) The General Assembly by law shall make appropriations for *all* expenditures of public funds by the State. ***' (emphasis added)

therefore, issuance of warrants as requested in and by said voucher would be contrary to said provision of said section 2(b).

b. Issuance of said warrants are prohibited by the provisions of section 7 of 'AN ACT to provide for the ordinary and contingent expenses of the Department of Local Government Affairs' (Public Act 78—1024) ***."

It is common ground between the parties that neither under the Constitution of 1870 nor under the provision quoted above from the Constitution of 1970 have all State funds been expended pursuant to appropriations. The comparable provision of section 17 of article IV of the Constitution of 1870 provided: "No money shall be drawn from the treasury except in pursuance of an appropriation made by law ***." Under this provision numerous decisions sustained the validity of expenditures from the State treasury without current appropriations. (See, *e.g., Green v. Black* (1933), 352 Ill. 623; *Elliott v. University of Illinois* (1936), 365, Ill. 338; *Antle v. Tuchbreiter* (1953), 414 Ill. 571; *People v. Illinois Toll Highway Com.* (1954), 3 Ill.2d 218.) So far as we have been advised no change has

been made in the practice of expending some State funds without a current appropriation. Indeed, it has been represented that more than two billion dollars in such funds are so expended annually.

We shall first consider the contention that the issuance of the warrant is prohibited by section 7 of "An Act to provide for the ordinary and contingent expenses of the Department of Local Government Affairs," which became effective July 22, 1974. (Pub. Act 78–1024; Laws of 1974, at 251.) In addition to appropriations for personal services, contractual services, commodities and the like with respect to the various operations of the Department, the Act contained appropriations for grants-in-aid for the State's share of various functions of local government, and for research and planning grants to various planning commissions. Section 5 of the Act appropriated a total of $2,285,770 to the Department from a "Federal Urban Planning Assistance Fund." Sections 6 and 7 of the Act did not make appropriations. Section 7 is immediately involved in this case since its validity is challenged by the plaintiff. It reads as follows:

"Section 7. Any Federal funds for the above or other purposes received in excess of the appropriation shall be paid into the proper trust account, but shall only be expended subject to additional appropriation by the General Assembly provided however that grants-in-aid for non-state agencies may be expended without additional appropriation by the General Assembly."

The Attorney General urges that section 7 is invalid, *inter alia,* because it violates section 8(d) of article IV of the Constitution of 1970, which provides: "Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject. Appropriation bills shall be limited to the subject of appropriations."

The first portion of section 7 is not an appropriation; rather it is a restriction upon the use of Federal funds which have not previously been appropriated. The re-

spondent has argued that to this extent section 7 is redundant, since it does no more than reiterate what the Constitution has already provided. If this proposition be accepted, the first portion of section 7—that portion which precedes the proviso—is to be regarded as innocuous, in that it only reiterates the requirement of section 2(b) of article VIII of the Constitution of 1970 that "The General Assembly by law shall make appropriations for all expenditures of public funds by the State."

But we are unable to see any theory upon which the balance of section 7, which reads "provided however that grants-in-aid for non-state agencies may be expended without additional appropriation by the General Assembly" can be sustained. To say that this proviso, which authorizes the expenditure of funds without any appropriation, nevertheless relates to the subject of appropriations requires, in our opinion, too great a logical jump to be acceptable. It is impossible for the court to say that the General Assembly would have adopted section 7 without the proviso relating to the expenditure of funds by non-State agencies without appropriations. Section 7 itself, however, we regard as clearly separable from the other portions of the Act—at least from the first five sections of the Act, which deal with appropriations for the ordinary and contingent expenses of the Department of Local Government Affairs.

The constitutional provision which limits appropriation bills to the subject of appropriations is not simply a formal requirement in the enactment of legislation. It is much more than that. It has its roots in the doctrine of separation of powers. As a practical matter, if subjects other than the immediate subject of appropriations in the sense of authorizations of expenditures are permitted to be included in an appropriations bill, then the veto power of the Governor is effectively nullified. Appropriation bills are characteristically passed late in the legislative session and they must become effective in order to prevent

government operations from being brought to a complete stop. The Governor's amendatory veto power is also affected, for an amendatory veto would also delay the availability of the appropriated funds to insure the continued operation of governmental functions.

The other contention advanced by the respondent to justify his refusal to honor the voucher involved in this action is that issuance of the warrant it called for would violate section 2(b) of article VIII of the Illinois Constitution of 1970, which provides:

> "The General Assembly by law shall make appropriations for all expenditures of public funds by the State. ***"

The voucher in question was drawn upon Trust Fund 593 to pay the salary of an individual employed at the University of Illinois for services rendered in support of a program under Title VIII of the Federal Housing Act of 1964 during the period July 16 through July 31, 1974. The respondent argues that because Public Act 78—1024 (fiscal year 1975) appropriated no money for expenditures under Title VIII, the respondent would violate the constitutional provision if he paid the voucher.

Although the respondent has thus attempted to raise a significant and far-reaching constitutional issue, we decline to resolve it in this case. We granted leave to file a petition for an original writ of *mandamus* in this case in the belief that we could resolve the relevant issues upon a record free from doubt. We are now satisfied that there are too many uncertain facts which would have to be resolved before this constitutional issue would be reached.

Both parties presented this case upon the assumption that Public Act 78—1024 was the only applicable appropriation, but we are by no means certain that that is the fact. Public Act 78—139 (Laws of 1973, at 336-340), which made appropriations for fiscal year 1974 (July 1, 1973, through June 30, 1974), provided:

> "Sec. 2. The sum of $50,000 or so much thereof as

may be necessary, is appropriated to the Department of Local Government Affairs for matching Federal funds in support of Title VIII of the Housing Act of 1964, as amended." (Laws of 1973, at 339.)

Public Act 78—139 also contained the following provision with respect to the use of excess Federal funds:

"Any Federal funds for such purpose or other purposes as may be prescribed by Federal law or regulation received in excess of the appropriation shall be paid into the proper Trust Account *and disbursed for such purpose or purposes prescribed by Federal law or regulation.*" (Emphasis added.) (Laws of 1973, at 339.)

Section 25 of "An Act in relation to State finance" provides:

"Outstanding liabilities as of June 30, payable from appropriations which have otherwise expired, may be paid out of the expiring appropriations during the three-month period ending at the close of business on September 30." Ill. Rev. Stat. 1973, ch. 127, par. 161.

The initial period of the Federal grant was April 1, 1973, through June 30, 1974. By agreement between the Department of Local Government Affairs and the Federal Department of Housing and Urban Development, the period of the grant was extended to September 30, 1974. The authority of the Department to enter into this extension agreement is not challenged. Thus it appears that the funds needed to pay the voucher in question were in Trust Fund 593 by virtue of the appropriation made in Public Act 78—139, and the expenditure of any excess Federal funds is subject to the provisions of that act rather than the provisions of Public Act 78—1024.

We do not have sufficient facts to determine whether this voucher represented an outstanding liability as of June 30, 1974. We think it is likely that it did. Moreover, we do not have the necessary facts to determine if the source of the payment of this voucher would be from the State appropriation of $50,000, from excess Federal funds, or from "indirect costs" assignable to project activities and

paid for from other moneys available to the Department of Local Government Affairs. Funds from all of these sources, in amounts which are unsegregated upon the record, are in Trust Fund 593. Since the record before us is insufficient to establish the relevant facts necessary for a determination of the constitutional issue sought to be raised, we refuse to consider that issue.

It is ordered that the writ of *mandamus* issue as prayed.

*Writ awarded.*