(No. 63737.—)

THE BOARD OF TRUSTEES OF COMMUNITY COL-
LEGE DISTRICT NO. 508, Appellant, v. ROLAND
W. BURRIS *et al.*, Appellees.

*Opinion filed November 23, 1987.*

CUNNINGHAM, J., took no part.

Murray & Girard, Ltd., of Chicago (Michael J. Murray and Richard E. Girard, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of coun-

sel), for appellees.

JUSTICE WARD delivered the opinion of the court:

The plaintiff, the Board of Trustees of Community College District No.. 508 (the College), brought an action in the circuit court of .Cook County seeking declaratory and injunctive relief against the Comptroller of the State of Illinois, Roland W. Burris, and the Director of the Department of Commerce and Community Affairs, Michael T. Woelffer (the Director). The plaintiff, which operates the City Colleges of Chicago, alleged that it was entitled to reimbursement under the State Mandates Act (Ill. Rev. Stat. 1983, ch. 85, par. 2201 *et seq.*) for funds it had expended in fiscal years 1982 and 1983 for veterans' scholarships to students enrolled in its community colleges. During those years, the General Assembly had not appropriated sufficient funds to cover the full costs of. the scholarship program. The plaintiff sought a declaratory judgment that defendant Roland W. Burris, in his capacity as Comptroller of the State (Comptroller), be ordered to reimburse the College for its expenditures for veterans' scholarships for 1982 and 1983 or, alternatively, that the Director be required to seek a supplemental appropriation in the General Assembly for the College's reimbursement.

Qualified Illinois veterans are eligible for scholarships to attend State colleges (Ill. Rev. Stat. 1985, ch. 126½, par. 69.1 (repealed and now Ill. Rev. Stat., 1986 Supp., ch. 122, par. 30—15.7d)), and the costs of the program prior to 1982 had been borne by the State. In the fiscal year 1982, the General Assembly's appropriations covered only 50% of the College's costs of the veterans' scholarship program and only 56% of the program's costs in the fiscal year 1983. Because the State did not appropriate sufficient funds for the scholarship program, the College alleges that it had to expend $450,681.58

from local revenue in 1982 and $308,033.79 in 1983 to fund the scholarships that had been awarded by the Illinois Department of Veterans' Affairs to students of the College.

The plaintiff alleged that it was entitled to reimbursement for these expenses under the State Mandates Act (Ill. Rev. Stat. 1983, ch. 85, par. 2201 *et seq.*) (the Act). The Act requires the General Assembly to reimburse units of local government for the added costs of certain types of State-mandated expenditures and, if State reimbursement is not provided, it relieves local governments of the obligation to implement such mandates. (Ill. Rev. Stat. 1985, ch. 85, pars. 2206, 2208.) The College contended that the underappropriation of funds to support the scholarship program amounted to a "service mandate" as defined in the Act and that the College was thus entitled to reimbursement of the monies it spent on the program in fiscal years 1982 and 1983.

Under section 8(c) of the Act, a local government that contends it is entitled to reimbursement must submit a claim for the costs of implementing a State mandate to one of three State agencies, with community colleges required to submit claims to the Illinois Community College Board (the ICCB). (Ill. Rev. Stat. 1985, ch. 85, par. 2208(c).) The College, following these provisions of the Act, submitted a claim to the ICCB for $450,681.58, the amount it paid from local revenues for veterans' scholarships in the 1982 fiscal year, and for $308,033.79, the amount it paid for the scholarships in the 1983 fiscal year. The ICCB approved both claims and asked the Comptroller to make payment. The Comptroller refused to pay on the ground that there was no appropriation for the amount claimed. The plaintiff then requested that the Department of Commerce and Community Affairs notify the General Assembly of the College's costs in order that supplemental appropriations might be made (Ill.

Rev. Stat. 1985, ch. 85, par. 2208(d)), but the Director of the Department refused.

The plaintiff's circuit court action against the Comptroller and the Director sought a declaratory judgment that the College was entitled to reimbursement under the Act and injunctive relief that would have required the Comptroller to reimburse the College. Alternatively, the College sought a declaratory judgment that the Director is required under the Mandates Act to notify the General Assembly of the necessity of a supplemental appropriation to cover the College's expenses for the scholarships and an injunction requiring the Director to seek supplemental appropriations from the General Assembly. The circuit court dismissed the College's complaint as to the Comptroller without prejudice to the plaintiff's seeking relief in the Court of Claims. The circuit court, on motions by both the plaintiff and the Director for summary judgment, held: the Mandates Act applies to supplemental fiscal acts concerning the veterans' scholarship program; the Director of the Department of Commerce and Community Affairs has a duty to notify the General Assembly of the additional and unsatisfied costs; the payment of at least 50% of the costs satisfied the obligation under the Act; the Comptroller was not required to pay claims where sufficient funds had not been appropriated; and the plaintiff was not required to appeal from the decision of the ICCB to the Mandates Board of Appeals, the reviewing body to which appeals may be brought from adverse decisions of the ICCB (Ill. Rev. Stat. 1985, ch. 85, par. 2208(d)).

The plaintiff appealed the circuit court's decision, and the Director cross-appealed. The appellate court affirmed in part and reversed in part. (144 Ill. App. 3d 867.) The appellate court affirmed the circuit court's conclusion that there was no need for the College to appeal the decision of the ICCB to the Mandates Board of Appeals

and that the Comptroller is not required to release funds without an appropriation by the legislature. The appellate court reversed the court's judgment that the Mandates Act applies to supplemental fiscal acts that fund the veterans' scholarship program and that the Director of the Department of Commerce and Community Affairs has a duty to notify the General Assembly of a need for supplemental appropriations. We allowed the College's petition for leave to appeal under our Rule 315(a). 107 Ill. 2d R. 315(a).

Before we consider the plaintiff's claims of error, we must first address the defendant's contention that the circuit court did not have jurisdiction to hear this action, as the claim properly is within the exclusive jurisdiction of the Court of Claims. Subject matter jurisdiction, of course, cannot be waived by the parties. (*Smith v. Jones* (1986), 113 Ill. 2d 126.) The defendant argues that under our prevailing sovereign immunity, lawsuits against the State and its agencies and officers acting under their lawful authority cannot be maintained. Too, the defendant says that a party seeking to enforce a claim for money allegedly owed by the State must assert the claim in the Court of Claims. The plaintiff, however, denies that the Court of Claims is the forum for this dispute. The circuit court had jurisdiction, the plaintiff says, because its action calls for a declaratory judgment of whether a State officer has exceeded his authority, which requires construction of the Mandates Act by the circuit court.

The Court of Claims Act provides that the court shall have exclusive jurisdiction to hear and determine "[a]ll claims against the state founded upon any law of the State of Illinois, or upon any regulation thereunder by an executive or administrative officer or agency." (Ill. Rev. Stat. 1985, ch. 37, par. 439.8.) The Act also provides that, "Any person who files a claim in the court

shall, before seeking final determination of his or her claim exhaust all other remedies and sources of recovery whether administrative or judicial; except that failure to file or pursue actions against State employees, acting within the scope of their employment, shall not be a defense." Ill. Rev. Stat. 1985, ch. 37, par. 439.24—5.

The defendant, relying on *City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, and *Schwing v. Miles* (1937), 367 Ill. 436, is correct in broadly stating that sovereign immunity precludes actions against State agencies or officers acting pursuant to their lawful authority. *Allphin*, however, supports the plaintiff's contention:

> " 'Whether or not a particular action falls within the prohibition of the [1870] constitution has not been determined solely by an identification of the formal parties to the record. The determination has rather depended upon the particular issues involved and the relief sought.' (*Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 37.) Where the issue is whether a State officer has refused to disburse appropriated funds according to law, and the relief sought is an injunction directing that those funds be released in accordance with the appropriation, the action is not one against the State. [Citation.] This is because '[t]he presumption obtains that the State, or a department thereof, will not, and does not, violate the constitution and laws of the State, but that such violation, if it occurs, is by a State officer or the head of a department of the State, and such officer or head may be restrained by a proper action instituted by a citizen.' (*Schwing v. Miles* (1937), 367 Ill. 436, 441-42)." (74 Ill. 2d 117, 124.)

(See also *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169; *City of Northlake v. Department of Transportation* (1983), 119 Ill. App. 3d 126, 128; *Betts v. Department of Revenue* (1979), 78 Ill. App. 3d 102, 107.) It was decided that the issues involved in *Allphin* (the effective date of a statute) and the relief requested (a de-

claratory judgment and the withholding of certain funds from the State treasury) was not a suit against the State. *City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 126; see also *E. H. Swenson & Son, Inc. v. Lorenz* (1967), 36 Ill. 2d 382, 385; *Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35; *Robb v. Sutton* (1986), 147 Ill. App. 3d 710.

The simple fact that an action may cause money to be paid from the State treasury is not dispositive of a sovereign immunity issue. (*Board of Education v. Cronin* (1979), 69 Ill. App. 3d 472.) We consider that the action here falls within the holdings that, where an action against a State officer or the director of a department is based on a contention that he is acting under an unconstitutional statute or under an unwarranted assumption of authority, such a suit may be maintained against the officer and is not an action against the State. (*Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169; *Sass v. Kramer* (1978), 72 Ill. 2d 485; *People ex rel. Freeman v. Department of Public Welfare* (1938), 368 Ill. 505, 507.) The plaintiff's complaint shows that it falls into this exception to the sovereign immunity bar. The basis of the College's action is that a violation of the law has occurred by the Comptroller's failure to disburse money and the Director's failure to notify the General Assembly of the need for supplemental appropriations. The College's suit challenges the defendants' interpretation of their obligations under the Mandates Act; it seeks a declaration of the rights and obligations of the parties under the Act. The central issues in this dispute are whether the public acts in question were "mandates" under the Act and whether the Comptroller and Director have properly interpreted their duties under the Act. As such, the College's suit is not one against the State, but is one that contests the conduct of State officials in allegedly proceeding in violation of law. Such an action is

within the jurisdiction of the circuit court. *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540; *County of Cook v. Ogilvie* (1972), 50 Ill. 2d 379.

The plaintiff, arguing for reversal of the appellate court, says that the statutory mandate for veterans' scholarships authorizes the Comptroller, although without specific appropriation, to disburse the funds required to pay fully the cost of the program. The College states that a recent amendment to the School Code (Ill. Rev. Stat., 1986 Supp., ch. 122, par. 30—15.7d) shows that a specific appropriation to fund the scholarship program is not required in order for the Comptroller to pay these costs. The amendment transferred the administration of the veterans' scholarships from the Illinois Department of Veterans' Affairs to the State Scholarship Commission and also provides that, "The amounts that become due to any *** community college [for the scholarships] shall be payable by the Comptroller to such institution on vouchers approved by the Commission." (Ill. Rev. Stat., 1986 Supp., ch. 122, par. 30—15.7d.) The new section 30—15.7d of the School Code became effective July 29, 1986, two months after the appellate court's decision. The College points out that this amendment to the Act no longer limits the Comptroller to disbursing only those funds made available to the administering agency for veterans' scholarships.

The previous section concerning veterans' scholarships stated:

> "The benefits of this Section shall be administered by *and paid for out of funds made available to the Illinois Department of Veterans' Affairs* ***. The amounts that become due to any *** community college' shall be payable by the Comptroller to such institution on vouchers approved by the Department." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 126½, par. 69.1.)

The plaintiff says that this appeal must be examined in light of the significance of legislative action taken subsequent to the filing of an appellate court opinion. The plaintiff says this legislative change following a judicial interpretation of the superseded section indicates an intent to change the meaning that the previous section had been given. As such, the plaintiff believes that the recent legislative amendment shows that the Comptroller should pay for the full amount of the scholarship program.

The defendant says the new statute, following the general holding, should be given prospective application. The defendant also argues the legislature's transfer of authority to administer the scholarships from one agency to another cannot authorize the conclusion that the scholarships should be paid for by the State in the absence of a specific appropriation or the establishment of a particular source of funding. The defendant points out that the proposed rules and emergency rules of the Illinois State Scholarship Commission implementing the new section specifically state that reimbursement to the colleges for veterans' scholarships is contingent upon available funding and that, if the funds are not exhausted, claims will be paid or prorated. 23 Ill. Adm. Code 1733 (1986).

The parties, not remarkably, are in agreement that the purpose of statutory construction is to ascertain and give effect to the legislative intent of the statute. The legislature is presumed to know the construction the statute has been given (*Stryker v. State Farm Mutual Automobile Insurance Co.* (1978), 74 Ill. 2d 507), and when the legislature amends an act by deleting certain language, it is presumed that the legislature intended to change the law in that respect (*Lingwall v. Hoener* (1985), 108 Ill. 2d 206, 212; *People v. Youngbey* (1980),

82 Ill. 2d 556, 563; *People v. Rink* (1983), 97 Ill. 2d 533, 539). Generally, however, a statute will be deemed to operate prospectively only, and will not be given a retroactive effect unless the language of the statute is clear in requiring it. (*Board of Trustees v. Human Rights Com.* (1981), 88 Ill. 2d 22, 35; *Board of Trustees v. Illinois Community College Board* (1978), 63 Ill. App. 3d 969.) The language of the new section does not clearly require that it be given retroactive effect; thus, it operates prospectively, and therefore proceedings under the statute are governed by the law in effect at the time of the alleged injury. *Board of Trustees v. Human Rights Com.* (1981), 88 Ill. 2d 22, 35.

Senate debates on this amendment show the legislature's primary concern in transferring authority over the scholarship program was to improve the efficiency of the program's administration and to assure that the administering agency *in the future* would seek reimbursement for the colleges and community colleges. Several senators expressed their dissatisfaction with the administration of the scholarship program by the Department of Veterans' Affairs. (84th Ill. Gen. Assem., Senate Proceedings, June 25, 1986, at 95, 102, 103 (remarks of Senator Berman, Senator Holmberg, Senator Schaffer and Senator DeAngelis).) The very problem at issue here—the underfunding of the scholarship program—was discussed in the Senate debates:

> "The difficulty we've had is that the department poorly administered the program and, as a result, the receiving schools, the community colleges and the colleges, have been shortchanged because the department[,] in addition to the shortchanging[,] refused, and I underline refused, to come in for a supplemental [appropriation] to pay that bill. Now there have been assurances made by the Scholarship Commission that they will not hesitate ... they have not hesitated in the past to come back to this General Assembly and say, hey, we had more students than

we figured on, we need more money." 84th Ill. Gen. Assem., Senate Proceedings, June 25, 1986, at 106 (remarks of Senator Rock).

Nothing in the legislative debate indicates that the amendment should be given the meaning that the plaintiff ascribes to it concerning reimbursement by the Comptroller without a specific appropriation. The debates make clear that the legislature expects that, if the appropriated funds fall short of the amount needed to fully pay for the scholarships, the administering agency will seek a supplemental appropriation—not that the Comptroller will disburse funds without an appropriation bill. The amendment was not intended to give the Comptroller wholesale authority to pay the scholarships, but rather it was intended to make the program more efficiently administered.

The plaintiff also contends, relying on *Antle v. Tuchbreiter* (1953), 414 Ill. 571, and *People ex rel. Kirk v. Lindberg* (1974), 59 Ill. 2d 38, that when a statute commands the performance of an act, the money necessary to fully pay the command may be disbursed without a specific appropriation. The defendant says that the General Assembly, and not the Comptroller, has the authority and duty to direct the expenditure of State funds by virtue of provisions of our constitution and that separation of powers problems will arise if the Comptroller is allowed to allocate funds from the treasury.

The General Assembly is authorized by our constitution to make appropriations for all the State's expenditures of public funds (Ill. Const. 1970, art. VIII, sec. 2(b)), and all appropriation bills are to be limited to the subject of appropriations (Ill. Const. 1970, art. IV, sec. 8(d)). An appropriation involves "the setting apart from public revenue a certain sum of money for a specific object" (*Illinois Municipal Retirement Fund v. City of Barry* (1977), 52 Ill. App. 3d 644, 646), and an appropri-

ation bill may not contain substantive law (*People ex rel. Director of Finance v. YWCA* (1981), 86 Ill. 2d 219, 238). The Comptroller is authorized by statute to refuse to draw a warrant if he determines—as he did here—that no appropriation or expenditure authority other than by appropriation is available to incur the obligation. Ill. Rev. Stat. 1983, ch. 15, par. 209(c).

We believe that under the circumstances, the Comptroller properly refused to pay the claims of the College. The history of the two public acts is important in reaching this decision. The amounts appropriated by the legislature for veterans' scholarships had been reduced by the Governor. The appropriation bill was returned to the legislature with a message from the Governor stating that the reductions were deemed necessary because of forecasted reductions in the State's revenue sources. Importantly, the Governor also stated in his message, "The reduction *** in veterans' scholarships will not affect veterans adversely. As the Attorney General stated in an opinion on January 26, 1978, veterans cannot be held liable for tuition. [1978 Ill. Att'y Gen. Op. 61.] The average loss of revenue to participating schools in fiscal year 1982 will be minimal, approximately $7,000 each." (1981 Ill. Laws 253, Governor's Message, at 253-54.) The General Assembly may override the Governor's line-item veto, thereby restoring the amount of the reduced or vetoed appropriation. (Ill. Const. 1970, art. IV, sec. 9(d); see *West Side Organization Health Services Corp. v. Thompson* (1980), 79 Ill. 2d 503.) The Constitution also provides that if the reduced amount is not restored by a record vote of a majority of members of each house, the reduced item becomes law. Ill. Const. 1970, art. IV, sec. 9(d).

The veto/override procedures provided in the Constitution were followed here, as none of the funds were restored. (1982 Ill. Laws 1865, 1865-66; 1981 Ill. Laws

257, 257-60.) While the financial effect on the colleges from the reduced appropriations appears to have been seriously underestimated, the legislature was nonetheless aware that the colleges would be carrying an extra burden resulting from this reduction and yet it chose not to restore any of the funds that had been removed by the Governor. In other words, both the legislature and the Governor intended that the funding for the scholarships be reduced and that the colleges be responsible for the difference in costs. If we accepted the plaintiff's view, the Comptroller, in essence, would be able to "override" the action of the legislature and the Governor in making these reductions in an appropriations bill, creating obvious problems under the separation of powers doctrine. (*People ex rel. Kirk v. Lindberg* (1974), 59 Ill. 2d 38; *County of Cook v. Ogilvie* (1972), 50 Ill. 2d 379, 385 ("While the Governor possesses the power to reduce an appropriation by means of an item veto, he could not exercise, nor could the legislature constitutionally delegate to him or a department of the executive branch of government, the power to transfer funds specifically appropriated for one program").) The disbursement of funds would frustrate the clear legislative intent to reduce the appropriation for this scholarship program. The Comptroller acted properly in refusing to disburse the funds claimed by the College.

The plaintiff next argues that the State Mandates Act applies to the legislature's appropriations for veterans' scholarships and thus the program should be fully funded by the State. The language of the Act, the plaintiff says, shows that the definition of "State mandate" covers legislative action that does not appropriate sufficient funds for veterans' scholarships. The plaintiff says this type of action by the legislature falls within the Act's definition of a State mandate because the College was required, in the Act's language, to "modify its activities in such a

way as to necessitate additional expenditures from local revenues." (Ill. Rev. Stat. 1985, ch. 85, par. 2203(b).) The defendant's position is that the plaintiff is not entitled to relief under the Act because the veterans' scholarship program predates the effective date of the Mandates Act. The defendant also argues that the Act does not apply to legislative action that appropriates funds because an appropriation bill must be limited to the subject of the appropriation and may not contain substantive legislation.

We agree with the appellate court's conclusion on this first question concerning the Mandates Act: that the veterans' scholarship program predates both the enactment and effective date of the Mandates Act and that the program is not affected under the Act. The law creating the veterans' scholarship program as it existed in the time period involved here was approved in August 1975 (Pub. Act 79—372, eff. August 10, 1975 (codified at Ill. Rev. Stat. 1977, ch. 126½, par. 45)), while the Mandates Act became effective more than five years later on January 1, 1981. The Mandates Act also applies to legislation enacted by the Eighty-Second General Assembly (Ill. Rev. Stat. 1981, ch. 85, par. 2210), and the plaintiff correctly observes that the two public acts involved were enacted by the Eighty-Second General Assembly. The enactment dates alone, however, do not qualify these public acts as State mandates covered under the Act. A "State mandate," as defined in the Act, is "any State-initiated statutory or executive action that requires a local government to establish, expand or modify its activities in such a way as to necessitate additional expenditures from local revenues." (Ill. Rev. Stat. 1985, ch. 85, par. 2203(b).) A "service mandate" is defined in the Act as "a State mandate as to creation or expansion of governmental services or delivery standards therefor." (Ill. Rev. Stat. 1985, ch. 85, par. 2203(f).) Thus, the controlling issue in

construing the Act is whether the General Assembly's action in not appropriating sufficient funds amounted to a "mandate" within the meaning of the Act to trigger full reimbursement to the College by the State.

The appellate court held that the legislative action here was not a service mandate because it did not impose a new duty upon the College to provide expanded services to veterans. We agree that the State's failure to provide the necessary funds was not an "expansion of governmental services," even though the College had to expend more money toward the scholarships than it had anticipated. The public acts in question, as discussed previously, are appropriation bills. An appropriation bill does not command the performance of an act, as a mandate does, but simply provides money for a program, activity or function of the State. An appropriation bill must, under our 1970 Constitution, be limited to the subject of the appropriations (Ill. Const. 1970, art. IV, sec. 8(d)) and not contain substantive law. (*People ex rel. Director of Finance v. YWCA* (1981), 86 Ill. 2d 219, 238.) The public acts did not contain substantive law to change the scholarship program; they were not service mandates within the meaning of the Act.

Because we have determined that there was no mandate covered by the Act, we need not address the plaintiff's contention that the Director of the Department of Commerce and Community Affairs has a duty to notify the General Assembly of a local government's relevant expenditures which were not covered by appropriated funds.

For the reasons given, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.