Nos. 1--93--2951)                               

     1--93--3171)                               

     1--93--3172)                               

     1--93--3173)(Cons.) 

     

                 

                PEOPLE ex rel. ROBERT SKLODOWSKI,       )         Appeal from the 

THOMAS HANAHAN, SANDEE HANAHAN,         )         Circuit Court 

of 

             SUSAN LILLIS, ROBERT NEGRONIDA,              )         Cook 

County. 

        and MARK D. WARDEN,                 ) 

                                    ) 

     Plaintiffs-Appellants,              ) 

                                    ) 

               v.                   ) 

                                    ) 

THE STATE OF ILLINOIS, JIM EDGAR,        ) 

Governor, PHILIP P. ROCK, President of  )  

the Senate, MICHAEL J. MADIGAN, Speaker       ) 

of the House of Representatives, DAWN   ) 

CLARK NETSCH, Comptroller of the State  ) 

of Illinois, and PATRICK QUINN,          ) 

Treasurer of the State of Illinois,           ) 

                                   )      

     Defendants and Counterdefendants-  ) 

     Appellees,                          ) 

                                    ) 

               and                 )      

                                    ) 

THE JUDGES' RETIREMENT SYSTEM OF         ) 

ILLINOIS, THE STATE EMPLOYEES'           ) 

RETIREMENT SYSTEM OF ILLINOIS, THE            ) 

STATE UNIVERSITIES RETIREMENT SYSTEM,   ) 

THE TEACHERS' RETIREMENT SYSTEM OF THE      ) 

STATE OF ILLINOIS, THE GENERAL ASSEMBLY       ) 

RETIREMENT SYSTEM, and the TRUSTEES OF      ) 

EACH FUND,                               ) 

                                    ) 

     Nominal Defendants and              ) 

     Counterplaintiffs-Appellants.       ) 

__________________________________________) 

                                    ) 

THE ILLINOIS RETIRED TEACHERS            ) 

ASSOCIATION,                        ) 

                                    ) 

     Intervenor-Appellant,              )                           

                                        )      

          v.                        ) 

                                    ) 

THE STATE OF ILLINOIS, JIM EDGAR,        ) 

Governor, PHILIP P. ROCK, President of  )  

the Senate, MICHAEL J. MADIGAN, Speaker       ) 

of the House of Representatives, DAWN   ) 

CLARK NETSCH, Comptroller of the State  ) 

of Illinois, and PATRICK QUINN,          ) 

Treasurer of the State of Illinois,          )         The 

Honorable 

                                          )         Lester D. Foreman, 

     Defendants-Appellees.              )         Judge 

Presiding.      

 

 

     JUSTICE BURKE delivered the modified opinion of the court upon 

denial of partial rehearing: 

     This case involves an action based on an alleged failure to 

contribute to, and on the alleged impairment of, retirement pension 

benefits and contractual rights by the State of Illinois and 

certain State officials.   

     Plaintiffs Robert Sklodowski, Thomas Hanahan, Sandee Hanahan, 

Susan Lillis, Robert Negronida and Mark D. Warden, 

counterplaintiffs, the State Employees' Retirement System (SERS), 

the State Universities' Retirement System (SURS), the Teachers' 

Retirement System of the State of Illinois (TRS) (retirement 

systems), and intervenor, the Illinois Retired Teachers Association 

(intervenor) appeal from an order of the circuit court dismissing 

plaintiffs' second amended complaint, counterplaintiffs SURS' and 

TRS' amended counterclaim, counterplaintiff SERS' counterclaim and 

intervenor's complaint for a writ of mandamus against defendants, 

the State of Illinois and its officials, Jim Edgar (Governor), 

Philip Rock (President of the Senate), Michael Madigan (Speaker of 

the House of Representatives), Dawn Clark Netsch (Comptroller) and 

Patrick Quinn (Treasurer) based on the separation of powers 

doctrine.   

     On appeal, plaintiffs, counterplaintiffs and intervenor argue 

that (1) the constitutional separation of powers doctrine does not 

prevent the judiciary from ordering State officials to perform 

nondiscretionary duties; (2) they have a contractual interest under 

the State constitution in the financial integrity of the State 

retirement systems; and (3) the federal and State contracts clauses 

prohibit impairment of pension contract rights.  Counterplaintiffs 

SERS, SURS and TRS also contend that the constitutional legislative 

supremacy clause does not prohibit their claims.  Plaintiffs also 

contend that their second amended complaint stated (1) a valid 

claim against defendants for breach of fiduciary duty and (2) a 

viable claim for a civil rights violation.  For the reasons set 

forth below, we affirm in part and reverse in part.     

     In 1963, the State of Illinois created five retirement 

systems: SERS, SURS, TRS, the General Assembly Retirement System, 

and the Judges Retirement System of Illinois.  Each retirement 

system is governed by a separate section of the Illinois Pension 

Code (Pension Code) (40 ILCS 5/1--101 et seq. (West 1993)).  In 

1989, Illinois Public Act 86-273, effective August 23, 1989, added 

the following language to sections 2--124, 14--131(f), 15--155(a), 

16--158(b) and 18--131(2) of the Pension Code (Ill. Rev. Stat. 

1991, ch. 108 (now 40 ILCS 5/1--101 et seq. (West 1993))), which 

pertain to the five retirement systems: 

          "Starting with the fiscal year which ends in 

          1990, the State's contribution [to the 

          retirement systems] shall be increased 

          incrementally over a 7-year period so that by 

          the fiscal year which ends in 1996, the 

          minimum contribution to be made by the State 

          shall be an amount that when added to other 

          sources of employer contributions, is 

          sufficient to meet the normal cost and 

          amortize the unfunded liability over 40 years 

          as a level percentage of payroll, determined 

          under the projected unit credit actuarial cost 

          method.  The State contribution, as a 

          percentage of the applicable employee payroll, 

          shall be increased in equal increments over 

          the 7 years period until the funding 

          requirement specified above is met." 

               Plaintiffs subsequently filed a class action in behalf of the 

participants of the retirement systems against defendants, and 

naming as nominal defendants the board of trustees of the 

retirement systems, seeking a writ of mandamus, declaratory 

judgment and an enforcement order based on defendants' alleged 

failure to comply with Public Act 86-273.  Plaintiffs alleged in 

their second amended complaint that defendants' "actions 

(specifically the State's failure to contribute as required under 

P.A. 86-273) and the individual Defendants' past and continuing 

improper budgeting (Governor) and appropriation (President of 

Senate and Speaker of the House), contrary to that required by P.A. 

86-273, constitute unlawful impairment of the participants' 

contractual rights under Article 13, 5 of the 1970 Illinois 

Constitution [pension protection clause]."  Ill. Const. 1970, art. 

XIII, 5.  Plaintiffs further alleged that the State, in failing 

"to act in accordance with P.A. 86-273," breached its fiduciary 

duties under the Illinois Pension Code (40 ILCS 5/1--109(d) (West 

1992)) and that defendants' "actions in budgeting, appropriating 

and contributing different lesser amounts than those required by 

P.A. 86-273 constitute the passage of law impairing obligations of 

contract, in violation with the Contract Clause of the United 

States Constitution" (U.S. Const., art. I, 10) "and/or an invalid 

attempt to grant the State freedom from making its contribution 

required by P.A. 86-273," thereby violating article I, section 16, 

of the Illinois Constitution (Ill. Const. 1970, art. I, 16).  

Plaintiffs' second amended complaint also included a count against 

the individual defendants alleging that they deprived plaintiffs of 

property under color of State law in violation of 42 U.S.C. 1983.  

     Intervenor's motion to intervene was granted on October 2, 

1992.  On December 21, 1992, counterplaintiffs SURS and TRS 

answered plaintiffs' second amended complaint and filed an amended 

counterclaim against the Governor, Comptroller and Treasurer 

alleging impairment of pension benefits and impairment of 

contractual rights in violation of article I, section 10, of the 

United States Constitution (U.S. Const., art. I, 10) and article 

I, section 16, of the Illinois Constitution (Ill. Const. 1970, art. 

I, 16).  On the same day, intervenor filed a three-count complaint 

against the State, Governor, Comptroller and Treasurer alleging 

that they impaired the pension benefits and contractual rights to 

benefits of participants in SURS and TRS in violation of the 

federal and State constitutions.       

     On February 19, 1993, the State, Governor, Senate President 

and House Speaker moved to dismiss plaintiffs' second amended 

complaint, arguing that the trial court lacked jurisdiction over 

the State pursuant to the doctrine of sovereign immunity; the 

doctrine of separation of powers prevented the court from 

compelling the General Assembly to appropriate public funds; the 

doctrine of separation of powers prevented the trial court from 

compelling the Governor to budget a certain amount of money because 

budgeting is an executive function; and a writ of mandamus was not 

available because "plaintiffs do not seek to compel State officials 

to perform ministerial duties."  On the same day, the Governor 

moved to dismiss the amended counterclaim filed by 

counterplaintiffs SURS and TRS, and the Governor and the State 

moved to dismiss intervenor's complaint.  Both motions were 

substantially similar in content to the Governor's and State's 

motion to dismiss plaintiffs' second amended complaint.      

     On August 6, 1993, the trial court granted the motions to 

dismiss plaintiffs' second amended complaint, SURS' and TRS' 

amended counterclaim and intervenor's complaint, finding that the 

separation of powers doctrine prevented the trial court from 

"directing the Legislature to take any specific conduct."   

     On August 23, 1993, counterplaintiff SERS filed a motion for 

leave to answer plaintiffs' second amended complaint and to file a 

counterclaim and motion to substitute counsel.  On August 31, the 

trial court granted SERS' motion, but dismissed its answer and 

counterclaim based on the separation of powers doctrine.    On 

September 2, 1993, SERS, SURS and TRS moved for reconsideration of 

the August 6 and August 31 orders dismissing SURS' and TRS' amended 

counterclaim and SERS' counterclaim, respectively.  On September 3, 

intervenor moved for reconsideration of the trial court's August 6 

order dismissing its complaint.  On the same day, the trial court 

denied all of the motions for reconsideration.  These appeals 

followed.  

     On April 16, 1996, defendants filed a "Renewed Motion to 

Dismiss Appeals as Moot" with this court, arguing that Public Act 

86-273, upon which complainants rely, was repealed by Public Act 

88-593.  Public Act 88-593 provides for continuing automatic 

appropriations of required State contributions to the retirement 

systems to bring the pension systems to a 90% funding ratio by the 

end of fiscal year 2045.  In response, plaintiffs, 

counterplaintiffs and intervenor argued that all beneficiaries who 

entered their respective retirement systems between August 23, 

1989, the date Public Act 86-273 became effective, and August 22, 

1994, the date it was repealed, have a vested contractual right to 

enforce the terms of Public Act 86-273 pursuant to article XIII, 

section 5, of the Illinois Constitution.  Plaintiffs, 

counterplaintiffs and intervenor further argue that the public 

interest exception to the mootness doctrine permits this court to 

review the dismissal of their complaints and counterclaims despite 

the fact that Public Act 86-273 has been repealed.   

     In addition, plaintiffs and counterplaintiff TRS argue that 

Public Act 88-593 became effective on August 22, 1994, and was 

therefore in effect when this court first denied defendants' 

original motion to dismiss as moot and, therefore, this court 

should again deny the motion because the circumstances have not 

changed.  We have taken defendants' renewed motion to dismiss with 

this case.     The standard of review of a trial court's order 

dismissing a complaint is de novo.  Anastos v. Chicago Regional 

Trucking Ass'n, 250 Ill. App. 3d 300, 618 N.E.2d 1049 (1993).  In 

considering the dismissal of an action, a reviewing court must 

interpret the allegations of the complaint in a light most 

favorable to the plaintiff and, if it appears that no set of facts 

from the pleadings could be proved which would entitle the 

plaintiff to relief, the dismissal must be affirmed.  Turner v. 

Rush Medical Hospital, 182 Ill. App. 3d 448, 537 N.E.2d 890 (1989), 

appeal denied, 127 Ill. 2d 643, 545 N.E.2d 133.  

 

        I. 

                                  Before reaching plaintiffs', counterplaintiffs' and 

intervenor's arguments, we first address the State's contention 

that the trial court lacks subject matter jurisdiction over it 

pursuant to the State Lawsuit Immunity Act (745 ILCS 5/1 (West 

1992)) and that "[t]o the extent *** that the pleadings attempt to 

assert a cause of action against the State of Illinois, they had to 

be dismissed."   Plaintiffs counter that they sought "by mandamus 

to compel public officials to perform clear and mandatory duties 

and that is not an action against the State."  Plaintiffs further 

maintain that since "the Court of Claims has no equity jurisdiction 

and cannot award the mandamus and declaratory relief Plaintiffs 

seek," the trial court is the proper forum to grant this relief.  

Counterplaintiffs SERS and SURS argue that questions involving the 

constitutionality of the State defendants' actions are not barred 

by the doctrine of sovereign immunity.   

     Pursuant to the State Lawsuit Immunity Act (745 ILCS 5/1 (West 

1992)), "[e]xcept as provided in the 'Illinois Public Labor 

Relations Act' *** or '[an act] to create the Court of Claims ***,' 

the State of Illinois shall not be made a defendant or party in any 

court."  The Illinois Court of Claims Act (705 ILCS 505/8(a) (West 

1992)) provides that the Court of Claims shall have exclusive 

jurisdiction to hear "[a]ll claims against the state founded upon 

any law of the State of Illinois, or upon any regulation thereunder 

by an executive or administrative officer or agency."    

     In Board of Trustees of Community College District No. 508 v. 

Burris, 118 Ill. 2d 465, 472, 515 N.E.2d 1244 (1987), a community 

college district's board of trustees brought an action against the 

State Comptroller and the Director of the Department of Commerce 

and Community Affairs seeking reimbursement from the Comptroller 

for the cost of providing veterans' scholarships or declaratory 

judgment requiring the Director to notify the General Assembly of 

the State's failure to fully fund the veterans' scholarship 

program.  Plaintiff there argued that it was entitled to 

reimbursement under the State Mandates Act for funds expended on 

veterans' scholarships.  The District 508 court found that because 

plaintiff's action "challenges the defendants' interpretation of 

their obligations under the Mandates Act," plaintiff's "suit is not 

one against the State, but is one that contests the conduct of 

State officials in allegedly proceeding in violation of the law."  

District 508, 118 Ill. 2d at 473. 

     Here, as in District No. 508, plaintiffs' cause of action, by 

their own admission, is not against the State but is one against 

the other named defendant officials regarding their interpretation 

and performance of statutory obligations.  Accordingly, the claims 

against the State itself are barred.  We find, however, that the 

proper basis for dismissal of the State as a party is the doctrine 

of sovereign immunity and not, as the trial court found, separation 

of powers.  Williams v. Board of Education of the City of Chicago, 

222 Ill. App. 3d 559, 584 N.E.2d 257 (1991). 

     

                                   II. 

     Plaintiffs, counterplaintiffs and intervenor first contend 

that the trial court erred in dismissing their complaints and 

counterclaims based on the separation of powers doctrine because 

defendant officials' obligations under Public Act 86-273 to fund 

the retirement systems are mandatory and it is the judiciary's 

responsibility to ensure compliance with the law by the executive 

and legislative branches.  Counterplaintiffs SERS and SURS assert 

further that, without judicial oversight, Public Act 86-273 is 

meaningless and unenforceable.     Defendants argue that the relief 

plaintiffs, counterplaintiffs and intervenor seek can be 

accomplished only through enacting appropriations, which is a 

legislative prerogative, and the preparation of a budget, which is 

an executive prerogative; therefore, the judiciary cannot compel 

the exercise of these functions in a particular manner because of 

the separation of powers doctrine.            

     "The legislative, executive and judicial branches are 

separate.  No branch shall exercise powers properly belonging to 

another."  Ill. Const. 1970, art. II, 1.  Once rights are created 

by the constitution or statute, "[i]t is within the realm of 

judicial authority to assure that the action of the members of the 

executive branch does not deprive [individuals] of an institution 

of rights conferred by statute or by the Constitution."  Dixon 

Ass'n for Retarded Citizens v. Thompson, 91 Ill. 2d 518, 533, 440 

N.E.2d 117 (1982).  A writ of "mandamus is discretionary and is 

appropriate only where there is a clear right to the requested 

relief, a clear duty of the [defendant] to act, and clear authority 

in the [defendant] to comply with the writ."  Orenic v. Illinois 

State Labor Relations Board, 127 Ill. 2d 453, 467-68.  "[W]hile 

mandamus will not lie to direct the manner in which the discretion 

is to be exercised, it is available to compel the performance of an 

action which requires the exercise of discretion or even compel the 

exercise of discretion itself."  Rock v. Thompson, 85 Ill. 2d 410, 

417-18, 426 N.E.2d 891 (1981) (opinion of Goldenhersh, C.J., joined 

by Ward and Clark, JJ.); see also Fergus v. Marks, 321 Ill. 510, 

517-18 (1926) (finding that where an officer "may be compelled by 

mandamus to act, the court in such a case is simply compelling 

action and not the manner of action").  

     Here, plaintiffs, counterplaintiffs and intervenor sought to 

have the judiciary order defendant officials by mandamus to comply 

with Public Act 86-273, which already provides, as enacted by the 

legislature, a level of funding of the retirement systems over a 

seven-year period.  Plaintiffs do not seek to have the judiciary 

compel the manner or means in which defendants perform their duties 

to achieve compliance.  In fact, "where a statute categorically 

commands the performance of an act, so much money as is necessary 

to pay the command may be disbursed without explicit 

appropriation."  Antle v. Tuchbreiter, 414 Ill. 571, 581, 111 

N.E.2d 836 (1953).  Additionally, as more fully discussed below, 

plaintiffs, counterplaintiffs and intervenor have a clear 

contractual right to the State contributions provided by Public Act 

86-273, which is thus a mandatory rather than a discretionary duty 

upon the State, and defendant officials thus have a duty and 

authority to act to comply with that Act; as plaintiffs point out, 

section 2(a) of article VIII of the Illinois Constitution (Ill. 

Const., art. VIII, 2(a)) requires the Governor to submit a budget 

in accordance with State law and section 8 of article IV (Ill. 

Const., art. IV, 8) requires "defendants Speaker of the House and 

President of the Senate to certify that the procedural requirements 

for passage have been met for each bill that passes both houses.  

Because it is the responsibility of the judiciary to assure that 

the actions of the executive and legislative branches do not 

deprive individuals of rights conferred by statute or the 

constitution (Dixon Ass'n, 91 Ill. 2d 518), the trial court 

therefore was not barred by the separation of powers doctrine from 

considering, based on the merits of plaintiffs', counterplaintiffs' 

and intervenor's claims, whether to issue a writ of mandamus to 

compel defendant officials to comply with Public Act 86-273.  

Accordingly, we find that the trial court erred in dismissing 

plaintiffs' second amended complaint, counterplaintiffs SURS' and 

TRS' amended counterclaim, counterplaintiff SERS' counterclaim and 

intervenor's complaint.  

     

                                  III. 

     Plaintiffs, counterplaintiffs and intervenor next maintain 

that defendants' failure to adequately fund the State retirement 

systems violates the pension protection clause of the Illinois 

Constitution.  Ill. Const. 1970, art. XIII, 5.  They further argue 

that Public Act 86-273 became part of the State's contract with the 

retirement system participants when the legislature amended the 

Pension Code.  Defendants counter that the pension protection 

clause does not "endow" beneficiaries "with a contractual right to 

enforce the funding mechanism" of Public Act 86-273, which they 

assert does not provide continuing appropriations, but protects 

them only from the State's failure to pay benefits to beneficiaries 

"when they are due." 

     Section 5 of Article XIII of the Illinois Constitution of 1970 

(Ill. Const. 1970, art. XIII, 5) provides that "[m]embership in 

any pension or retirement system of the State, any unit of local 

government or school district, or any agency or instrumentality 

thereof, shall be an enforceable contractual relationship, the 

benefits of which shall not be diminished or impaired [pension 

protection clause]."  This clause has been interpreted as creating 

"contractual protection for all pension plans."  (Emphasis added.)  

Buddell v. Board of Trustees, State Universities Retirement System 

of Illinois, 118 Ill. 2d 99, 102, 514 N.E.2d 184 (1987).  The 

provisions of the Pension Code are "actual terms" of the 

contractual relationship established in section 5.  Kerner v. State 

Employees' Retirement System of Illinois, 72 Ill. 2d 507, 514, 382 

N.E.2d 243 (1978).  In construing a statute, a court's "objective 

is to ascertain and give effect to the legislative intent as 

determined from the necessity or reason for the enactment and the 

meaning of the words employed.  Kerner, 72 Ill. 2d at 512.  It is 

well settled that the legislature in passing a law is presumed not 

to have "intended a meaningless act."  Niven v. Siquiera, 109 Ill. 

2d 357, 367, 487 N.E.2d 937 (1985).  The law assumes that the 

legislature in enacting new law is "aware of judicial decisions 

concerning prior and existing law and legislation."  Kozak v. 

Retirement Board of the Firemen's Annuity & Benefit Fund of 

Chicago, 95 Ill. 2d 211, 218, 447 N.E.2d 394 (1983). 

     Here, in 1989 the legislature was aware of the magnitude of 

the retirement systems' underfunding and, as a result, enacted 

Public Act 86-273.  It is clear that the legislature, by enacting  

Public Act 86-273, intended to bind itself to the obligation of 

paying these funds to the retirement systems.  Moreover, when the 

legislature amended the Pension Code to add the requirement of an 

increase in State contributions over a seven-year period to each of 

the five retirement systems pursuant to Public Act 86-273 in order 

to attain full funding, those requirements became part of the 

State's contract with the pension beneficiaries.  Beneficiaries in 

each system provided consideration for this added term of the 

contract by continuing to render their services to the State and to 

pay their own contributions. 

     This is not a situation like that in People ex rel. Federation 

of Teachers v. Lindberg, 60 Ill. 2d 266, 326 N.E.2d 749 (1975), 

upon which defendants rely, where participants in several teachers' 

pension funds challenged the governor's item reduction of fiscal 

appropriations to the funds, arguing that the Pension Code 

establishing a contractual relationship between themselves and the 

State obligated the State to fulfill its funding commitments.  The 

Lindberg court found that the statutory language relied upon by the 

plaintiffs was made a part of the Pension Code before the adoption 

of the 1970 Constitution, at a time when such pensions were 

uniformly not considered as creating any contractual right, and 

which, the Lindberg court determined, did not evidence the 

legislature's intent to establish a vested contractual right.  

Lindberg, 60 Ill. 2d at 275.  In so finding, the Lindberg court 

concluded that "had the legislature wished to establish a 

contractual right, it would have been a simple matter to so state."  

Lindberg, 60 Ill. 2d at 275.  The court lastly stated:  "Plaintiffs 

have asserted that the respective pension systems are inadequately 

funded.  The question of the specific fiscal appropriations 

necessary to meet these deficiencies is one which *** should be 

directed to the legislature."  Lindberg, 60 Ill. 2d at 277. 

     In the present case, the legislature, pursuant to section 5 of 

article XIII which established an enforceable contractual 

relationship between pension beneficiaries and the State, did in 

fact do just as the Lindberg court indicated it had the power to do 

by specifically enacting Public Act 86-273 which promised pension 

beneficiaries an increase in State contributions over a seven-year 

period for the specific purpose of fully funding the admittedly 

underfunded retirement systems.  In other words, the legislature 

provided for the "how much" and "when" as to funding the retirement 

systems.  Plaintiffs here did not claim that the legislature must 

make specific appropriations, but rather that, by enacting Public 

Act 86-273, the legislature failed to make contributions pursuant 

to the formula it established to require it to make contributions 

to the funds during a seven-year period in order to fully fund the 

pension systems.  We further observe that Public Act 86-273 does 

not contain any limiting language, as possibly Public Act 88-593 

(40 ILCS 5/1--103.3) does which defendants cite to in support of 

their motion to dismiss these appeals as moot, to indicate that the 

legislature's commitment expressed in Public Act 86-273 is a 

"goal."  Like the situation in Lindberg, the legislature could have 

included some limiting language to indicate that its intent was not 

to obligate itself to a level of funding over the seven-year 

period, but it did not do so.  To accept defendants' position would 

result in allowing the legislature to unilaterally change the terms 

of its contract once the time for compliance with the former terms 

is required.  Such a practice could continue indefinitely, thus 

making each law (contract) meaningless. 

     We further note that our supreme court's recent decision in 

McNamee v. State of Illinois, No. 79592 (October 18, 1996), upon 

which defendants rely and which was filed subsequent to the 

issuance of the opinion in this case, is distinguishable from the 

case at bar.  In McNamee, the plaintiffs alleged that an amendment 

changing the method of computing the annual amount required to 

amortize the unfunded accrued liability of police pensions 

diminished and impaired their pension benefits because the new 

method would "allow municipalities to contribute lower initial 

annual contributions to the funds, thereby making the funds less 

secure" (slip op. at 3) and that they had a "protected contractual 

right [pursuant to section 5, article XIII] to the 'benefit' of the 

more secure fund created by the prior funding method" (slip op. at 

5).  The McNamee court, in interpreting the intent of the framers 

of our constitution, found that section 5 of article XIII creates 

an enforceable contractual right to pension benefits, but does not 

"control the manner in which the state and local governments fund 

their pension obligations" (slip op. at 12).  Because the 

plaintiffs did not allege that the amendment diminished their right 

to receive pension benefits, the McNamee court held that the 

amendment did not violate section 5, article XIII.  The court also 

found that "[t]the word 'impaired' is meant to imply and to intend 

that if a pension fund would be on the verge of default or imminent 

bankruptcy, a group action could be taken to show that these rights 

should be preserved" (slip op. at 12), and that the plaintiffs had 

not alleged that the new funding method would impair their benefits 

by placing the fund on the verge of default or imminent bankruptcy. 

     In the present case, however, the legislature, by enacting 

Public Act 86-273, has imposed upon itself a greater obligation 

beyond its contractual obligation set forth in section 5, article 

XIII, by in fact requiring that it incrementally increase its 

contributions to the pension funds over a seven-year period to 

fully fund the pension funds--to pay its outstanding debt to the 

pension funds--rather than to be obligated only to pay benefits to 

participants as they become due, just as the Lindberg court 

indicated the legislature had the power to do.  In other words, 

although the intent of the framers of the constitution was not to 

control the funding of the pension funds, the legislature, by 

enacting Public Act 86-273, promised the pension funds a level of 

funding, notwithstanding that the Act itself does not set forth the 

means by which the legislature was to perform its promise.  Thus, 

it is this obligation that the plaintiffs here seek to compel 

defendants to perform; plaintiffs do not seek to dictate the 

specific means by which defendants are to comply with the promised 

funding under Public Act 86-273.  See Dadisman v. Moore, 181 W. Va. 

779, 384 S.E.2d 816 (1988) (holding that the Governor has a 

ministerial duty to prepare a budget consistent with the West 

Virginia Constitution and statutes) and Weaver v. Evans, 80 Wash. 

461, 495 P.2d 639, 649 (1983) (holding that the legislature's 

adoption of a systematic method of funding "becomes one of the 

vested contractual pension rights flowing to members of the 

system").  We additionally note that unlike the plaintiffs in 

McNamee, plaintiffs, counterplaintiffs and intervenor here have all 

in one form or another alleged that the financial status of their 

separate pensions funds is in a precarious state and that there 

will be no funds from which to pay benefits by 2008, 2009.  Whether 

this status is the equivalent of "on the verge of default or 

bankruptcy" must be determined by the trial court, but as pleaded, 

plaintiffs, counterplaintiffs and intervenor have stated a 

recognized cause of action. 

     Here, Public Act 86-273 provided a formula for contributions 

to the pension funds.  Plaintiffs, counterplaintiffs and intervenor 

had a vested contract right in the funding provisions under Public 

Act 86-273 from the date Public Act 86-273 became effective until 

August 22, 1994, when it was repealed by Public Act 88-593.  It is 

clear from McNamee, that beneficiaries need not wait until they 

have been denied benefits before they can make a claim that their 

benefits have been impaired.  Plaintiffs, counterplaintiffs and 

intervenor adequately alleged in their respective complaints and 

counterclaims that, through defendants' underfunding of the 

retirement systems, their benefits have been impaired.  

Accordingly, the trial court erred in dismissing plaintiffs' second 

amended complaint, counterplaintiffs SURS' and TRS' amended 

counterclaim, counterplaintiff SERS' counterclaim and intervenor's 

complaint.   

 

                                    IV. 

     Plaintiffs, counterplaintiffs and intervenor also contend that 

defendants' failure to budget, contribute and appropriate the 

proper amounts to the systems, as required by Public Act 86-273, 

impaired their contract rights and violated article I, section 10, 

of the federal constitution (U.S. Const., art. I, 10) and article 

I, section 16, of the State constitution (impairment of contracts 

clauses) (Ill. Const. 1970, art. I, 16).    

     Article I, section 10, of the United States Constitution 

provides that "[n]o State shall *** pass any *** Law impairing the 

Obligation of Contracts."  U.S. Const., art. I, 10.  Article I, 

section 16, of the Illinois Constitution provides that "[n]o *** 

law impairing the obligation of contracts or making an irrevocable 

grant of special privileges or immunities, shall be passed."  Ill. 

Const. 1970, art. I, 16.  

     We first note that the trial court did not make any finding on 

this issue.  However, based on our determination above, that 

plaintiffs, counterplaintiffs and intervenor have a contractual 

right in the funding provision of Public Act 86-273, as well as 

their allegations in their respective complaints and counterclaims 

that through defendants' underfunding of the retirement systems, by 

failing to budget, appropriate and contribute funds, their benefits 

have been impaired, we find that they have stated a recognized 

cause of action.  Accordingly, the trial court erred in dismissing 

plaintiffs' second amended complaint, counterplaintiffs SURS' and 

TRS' amended counterclaim, counterplaintiff SERS' counterclaim and 

intervenor's complaint. 

     Lastly, the parties' following arguments need not be addressed 

by this court for the reasons stated:  (1) Plaintiffs argue that 

they have standing to bring this action even though all retirement 

system benefits are presently being paid by the State because 

"system bankruptcy is not a predicate for standing."  Defendants, 

however, do not challenge plaintiffs on this "issue" on appeal; (2) 

Counterplaintiffs SERS, SURS and TRS argue that they have a 

responsibility to act in behalf of their members and that they are 

entitled to bring claims in favor of their participants and 

beneficiaries.  Defendants do not challenge counterplaintiffs on 

this "issue" on appeal and, moreover, the trial court did not 

address this issue; (3) Plaintiffs contend that defendants breached 

their fiduciary duties under the Pension Code and (4) that they 

also violated plaintiffs' property rights protected by 42 U.S.C. 

1983 when they budgeted, appropriated and contributed lesser 

amounts to the retirement systems than required by law.  The trial 

court did not make any finding regarding these two claims and we 

therefore do not address them.  

     For the reasons stated, we affirm the circuit court's 

dismissal of plaintiffs', counterplaintiffs' and intervenor's 

claims against the State of Illinois based on sovereign immunity; 

we reverse the court's dismissal of plaintiffs', counterplaintiffs' 

and intervenor's claims against all other defendants; and we remand 

this cause for further proceedings consistent with the views 

expressed herein.  We also deny defendants' renewed motion to 

dismiss this case as moot. 

     Affirmed in part and reversed in part; cause remanded. 

     HARTMAN, P.J., and SCARIANO, J., concur.