(No. 15761.—Writ denied.)

THE PEOPLE *ex rel.* LeRoy Millner, Petitioner, *vs.* ANDREW RUSSEL, Auditor of Public Accounts, Respondent.

*Opinion filed February 19, 1924.*

1. CONSTITUTIONAL LAW—*constitution requires every bill to be approved by Governor or passed over his veto.* The provision of section 16 of article 5 of the constitution is all-inclusive, and requires "every bill" passed by the General Assembly, including appropriations for salaries of State officers, to be approved by the Governor, or, in case he disapproves it, to be passed over his veto, before it becomes a law.

2. SAME—*courts cannot deny the existence of authority merely because its exercise may be abused.* The bare possibility that an official may abuse his authority does not authorize a court to take from him power with which the constitution plainly invests him, as no constitution or law can make it impossible for an officer to abuse power invested in him.

3. SAME—*legislature must make appropriations for salaries of State officers.* It is the constitutional duty of the General Assembly to make appropriations to pay the salaries of officers of the State government.

4. SAME—*purpose of constitutional provision that appropriations for salaries shall contain no other subjects.* The intention of section 16 of article 4 of the constitution, providing that bills making appropriations for salaries of State officers shall contain no provision on any other subject, is to make such appropriations a distinct subject for legislative action, separate and apart from appropriations for other purposes.

5. SAME—*there must be an appropriation for payment of money out of State treasury.* The constitution prohibits any money being drawn out of the State treasury except pursuant to an appropriation made by law for its payment, and both the constitution and statutes are intended to prevent any money being paid out of the treasury unless its payment has been authorized by law.

6. SAME—*Governor may veto salary item provided for in appropriation bill—mandamus.* The Governor has the constitutional power to veto a salary item provided in an appropriation bill "for the pay of officers and members of the next General Assembly and certain officers of the State government," and the effect will be the same as if the salary item vetoed had been omitted from the bill; and if there is no other appropriation made by law for such salary the State Auditor cannot be compelled by *mandamus* to issue his warrant therefor.

7. SAME—*an appropriation for contingent expenses cannot be made continuing.* Under the constitution all appropriations necessary for the ordinary and contingent expenses of the government lapse at the expiration of the first fiscal quarter after the adjournment of the next regular session of the General Assembly, and a continuing appropriation beyond that period cannot be made.

8. FEES AND SALARIES—*Inheritance Tax act does not appropriate salaries of assistant Attorneys General.* Section 12 of the Inheritance Tax act does not appropriate money to pay the salaries of the assistant Attorneys General provided for in the act, and although the act fixes the salaries it cannot be considered as making an appropriation in violation of the constitutional provision that an appropriation to pay the salary of a State officer shall contain no other subject than the appropriation.

ORIGINAL petition for *mandamus.*

JAMES J. BARBOUR, for petitioner.

EDWARD J. BRUNDAGE, Attorney General, CLARENCE N. BOORD, and JOHN J. REEVE, for respondent.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This is an original petition filed in this court for a writ of *mandamus* against the Auditor of Public Accounts. The petition alleges relator was appointed January 9, 1917, by the Attorney General of Illinois assistant Attorney General of Illinois at a salary fixed by law at $5000 per year, payable in monthly installments, and that since that time he has continued to be, and now is, such officer; that his duties are to see to the enforcement of the Inheritance Tax law in Cook county, by which act petitioner's salary was fixed. The petition alleges the Auditor has refused to issue warrants for relator's salary for the months of July and August, and still fails and refuses to issue warrants although presented with vouchers in proper form. The petition further alleges the Fifty-third General Assembly included in the act making appropriations to pay officers and

members of the next General Assembly and officers of the State government, money to pay assistant Attorneys General in Cook county. The Governor vetoed those items of the bill. The petition prays that the writ of *mandamus* issue commanding the Auditor to issue warrants for relator's salary, payable out of any money in the State treasury not otherwise appropriated. The Auditor demurred to the petition, and the case was submitted on briefs on the issue of law raised by the petition and the demurrer thereto.

The petitioner contends the Governor had no authority to veto the appropriation made to pay the salary; also that the statute fixed the salary petitioner should receive and the time of its payment, and is in itself an appropriation within the meaning of section 17 of article 4 of the constitution.

Since 1915, by section 12 of the Inheritance Tax statute, the Attorney General has been authorized to designate in counties of the third class an assistant (or assistants) Attorney General, whose special duty shall be to attend to all matters pertaining to the enforcement of the act in respect to the appraisement, assessment and collection of the inheritance tax in such counties. The statute fixes the salary of one assistant Attorney General at $5000 per annum, the salary of each of two assistants at $4000 per annum, and the salary of one assistant at $3500 per annum, and directs that the salaries shall be paid in monthly installments.

It is first contended by relator that the legislature having passed an act creating the office, fixing the salary and the time of its payment, the Governor had no lawful power to veto the item for its payment in the appropriation bill for the payment of officers and members of the next General Assembly and officers of the State government. It is argued that it is the meaning and intent of section 16 of article 4 of the constitution that salaries of officers of the State government shall be paid, and the legislature having created the office, fixed the salary and provided that it should be paid monthly, was equivalent to a command that

relator be paid his salary in monthly installments. From
that premise it is argued that to hold the Governor had the
constitutional power to veto the item of the appropriation
bill for payment of the salary would require holding the
constitution invested the Governor with power to disobey
statutes fixing the salaries of officers and members of the
General Assembly and all State officers.

Section 16 of article 5 of the constitution provides that
"every bill passed by the General Assembly shall before it
becomes a law" be presented to the Governor. If he ap-
proves and signs it, it becomes a law. If the Governor
does not approve it, he is required to return it, with his ob-
jections, to the house in which it originated, which house
shall enter the objections on its journal and proceed to re-
consider the bill. If both houses, by a two-thirds vote of
the members elected, again pass the bill, it becomes a law
notwithstanding the Governor's veto. The same section of
article 5 further provides that bills making appropriations
shall specify the objects and purposes for which they are
made in distinct items and sections, and if the Governor
will not approve any one or more of the items or sections
but shall approve the residue, the items or sections approved
shall become a law and the Governor shall return the bill
to the house where it originated, with his objections, and
unless both houses by the required vote overrule the veto
the items or sections vetoed never become a law. The lan-
guage of the constitution, it will be seen, is broad and all-
inclusive. It requires "every bill" passed by the General
Assembly to be approved by the Governor, or, in case he
disapproves it, to be passed over his veto before it becomes
a law. The language is direct, plain, and affords no basis
for the construction that bills or items of bills making ap-
propriations for salaries of officers of the State government
were intended to be excepted from bills the Governor has
power to veto. It is true, if the Governor is clothed with
such power to veto he might veto appropriations to pay

salaries of any or all State officers, including judges of the courts, and thereby suspend the operation of any or all departments of the State government. It is not conceivable that any man elected to the office of Governor could ever become so reckless as to invite his own destruction by such an act. The bare possibility that one might do so does not authorize a court to take from the executive, by construction, powers which the constitution plainly invests him with. The possibility that a power conferred on an official by the constitution may be abused affords no basis for a court to hold the power never existed. It is as conceivable that the General Assembly might refuse to appropriate money to pay salaries of State officers and to carry on the different departments of the State government as it is that the Governor might paralyze the government by veto. It is possible for all public officers to abuse the powers conferred on them by the constitution and laws, and they sometimes do so. No constitution or law can make it impossible for an official to abuse the power invested in him, and because it may be possible for an official to abuse or wrongfully exercise the powers conferred on him does not support an argument that he never had the power. The constitution and laws necessarily invest public officials with certain powers in the performance of the duties of the office. If the official neglects to exercise the powers necessary to a proper discharge of the duties of the office, or if he wrongfully exercises or exceeds his powers, the evil cannot be remedied by holding he never had the power he abused. It would be a greater evil to so hold than is the infrequent evil of abuse or wrongful exercise of powers by public officers. Men may, and do, honestly differ about what powers the constitution and laws confer on public officials and what acts are a proper exercise of the powers conferred. It would be a most unwise departure from our long-existing standards and principles of government to deny the existence of lawfully conferred powers because their abuse or wrongful

exercise is possible. It must not be understood what we have said on the subject is intended as any indication of opinion that there is involved in this case an abuse or wrongful exercise of power by the Governor. What we have said is only an expression of our views as to the existence of the power. If it existed, its exercise was a function properly belonging to the executive in the exercise of what he considered his duty.

Relator's further contention is that a statute definitely fixing the salary of a State officer is of itself an appropriation made by law and authorizes and requires the payment of the salary out of the State treasury. The earliest case cited to sustain that contention is *Thomas* v. *Owens,* 4 Md. 189. There the constitution created the office of comptroller and fixed the salary he should receive. The constitution also contained a provision that no money should be drawn from the treasury "except in accordance with an appropriation made by law." The legislature had made no appropriation to pay the comptroller for a certain period of his term, and he applied for a writ of *mandamus* to compel the Treasurer to pay him. The court said the purpose of the clause of the constitution prohibiting money from being drawn except in accordance with an appropriation made by law was to prevent the expenditure of the people's money without their consent, either as expressed by themselves in the constitution or by their representatives in constitutional acts of legislation; that the people had in the organic law not only given their consent but had commanded the salary to be paid the comptroller, and if it was in the power of the Treasurer to withhold payment it would be to place him above the constitution and invest him with authority to annul the sovereign will and stop the wheels of government. The opinion of the court concludes: "We hold, for the reasons we have assigned, the people have given their consent to the payment of the salaries fixed in the constitution by declaring the amount 'shall be received' by

the particular officers, and that this is an appropriation made by law—by the supreme law of the State." That case has been followed and its reasoning adopted by a number of other States where a similar question was involved.

*State* v. *Hickman,* 9 Mont. 370, was *mandamus* to compel the State Treasurer to pay the salary of the Secretary of State. On request of Rotwitt, Secretary of State, the Auditor drew a warrant on the Treasurer for its payment. The Treasurer refused to honor the warrant on the ground that no provision had been made for its payment. The salary of the Secretary of State was fixed by the constitution, which contained a provision that it should not be increased or decreased during his term of office. The constitution also provided that no money should be paid out of the treasury except upon appropriations made by law and on warrants drawn by the proper officer in pursuance thereof. The court adopted the reasoning of *Thomas* v. *Owens, supra,* and awarded the writ commanding the Treasurer to pay the warrant "out of moneys in the treasury not otherwise appropriated."

*State* v. *Weston,* 4 Neb. 216, was *mandamus* to compel the Auditor to draw his warrant for the payment of the salary of the Attorney General of the State. At the time Roberts, the relator, was elected to the office it existed by virtue of a statute, but after his election it was made a constitutional office and the tenure of the incumbent and his salary were fixed by the constitution. The constitution (section 25) provided that the Auditor should draw warrants quarterly for the payment of the salaries of all officers under the constitution whose salaries were not otherwise provided for, "which shall be paid out of any funds not otherwise appropriated." Another article of the constitution provided that "no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law." The court held there was no conflict between the two provisions of the constitution referred to;

that section 25 appropriated sufficient funds not otherwise appropriated, to pay the State officers' salaries whenever it happened that no legislative appropriation existed, and that an appropriation for that purpose might as effectually be accomplished by the constitution as by legislative enactment. The court cited and relied on *Thomas* v. *Owens, supra,* as being directly in point.

Later the same court, in *State* v. *Moore,* 50 Neb. 88, held the decision in the *Weston case* had no application when a statute was involved. *State* v. *Moore* was *mandamus* to compel the Auditor to draw a warrant on the treasury in favor of the relator. The legislature had passed an act providing for payment out of the State treasury to any person or corporation of a bounty of five-eighths of one cent per pound for each pound of sugar manufactured in the State of Nebraska under the conditions and restrictions of the act. The act provided that claims under it, verified, filed and approved by the Secretary of State, should be certified to the Auditor, who should draw a warrant on the Treasurer payable to the person to whom it was due. The Auditor refused to draw a warrant because there was no appropriation out of which it could be paid. It was contended the statute made the appropriation. The constitution contained a provision that all appropriations should expire at the end of the first fiscal quarter after adjournment of the next regular session of the legislature, which sessions were required to be held biennially. The court held an appropriation for the purpose was indispensable, no matter how great the legal or moral obligation of the State to make the payment; that a promise by the State to pay money was not an appropriation, neither is the duty on the part of the legislature to make an appropriation an appropriation. The court cited *State* v. *Weston, supra,* and said that in a later case (*State* v. *Weston,* 6 Neb. 16,) it was held the former decision was authority only where the office was created by the constitution, and that it was

an authority that the same rule had no application to officers whose salaries were fixed by the legislature, in which case a specific appropriation was required.

*Reed* v. *Huston,* 24 Idaho, 26, was *mandamus* to compel the Auditor to draw his warrant for the payment of the salary of the commissioner of immigration, labor and statistics. The constitution authorized the creation of that office and the legislature passed an act creating the officer, to be appointed by the Governor. The legislative act creating the office also fixed the salary at $2500 per year, which was to be paid as the salaries of other State officers. At the session of the legislature preceding the commencement of the suit it failed to make an appropriation for that officer. The constitution contained a provision that no money should be drawn from the treasury "but in pursuance of an appropriation made by law," and the statute provided that the salaries of all State officers whose salaries were paid from the State treasury should be paid quarterly, in January, April, July and October of each year, "out of any money in the treasury not otherwise appropriated." Another statute provided that in all cases of salaries ascertained and allowed by law the Auditor must draw warrants on the treasury for the amount, provided the whole amount drawn and paid out for any purpose should never exceed the amount appropriated for that purpose. The court said the office was a constitutional one; that the salary had been fixed by the legislature; that the statute directed the payment of salaries of State officers out of any money in the treasury not otherwise appropriated, and lastly required the Auditor to draw warrants to pay such salaries against any unexhausted appropriation made therefor, and held that was an appropriation for the salaries of the State officers. The court further held that it was a continuing appropriation for the payment of the salaries each year "out of any money in the treasury not otherwise appropriated." The court defined the expression "not otherwise appropriated"

to. mean money in the treasury that was not, at the time payment of the salary was due, appropriated by an act of the legislature to some other special or particular purpose. "In other words, any money that may be in the treasury at the time a salary becomes due, which is not at the time appropriated by the constitution or act of the legislature to some other use or purpose, is clearly not otherwise appropriated, and is therefore available and appropriated by this act to the payment of the salaries designated and enumerated in section 276, Revised Codes."

*Humbert* v. *Dunn*, 84 Cal. 57, was *mandamus* to compel the comptroller to issue a warrant for the payment of the salary of a member of the commission on rivers and harbors. The comptroller refused to issue the warrant on the ground no appropriation had been made out of which it could be paid. The statute fixed the salary of the commissioner at $4000 per annum, payable monthly "out of any money in the State treasury not otherwise appropriated." The court said the question was whether the statute referred to was an appropriation within the meaning of the constitution, which provided that "no money shall be drawn from the treasury but in consequence of appropriations made by law." The court said no particular form was necessary to make an appropriation; that the intention of the legislature that the salary should be paid monthly was manifested by the statute, which contained all the things necessary to a valid appropriation act.

*State* v. *Burdick*, 4 Wyo. 272, was *mandamus* to compel the Auditor to issue his warrant for the payment of the salary of a State examiner. The office was created by the constitution, which provided his compensation should be fixed by law. The legislature fixed the salary at $2000 per annum, payable from the State treasury in the same manner as other salaries of State officers are paid. The legislature made no appropriation to pay the examiner's salary for the two years beginning March 31, 1893, and end-

ing March 31, 1895. The constitution contained a provision that except for interest on the public debt, "money shall be paid out of the treasury only on appropriations made by the legislature, and in no case otherwise than upon warrants drawn by the proper officer in pursuance of law." The court held the statute creating the office and fixing the salary was impliedly a continuing appropriation of money to pay the salary, and a special appropriation at each biennial session of the legislature was not required to keep it alive and effective.

*People* v. *Goodykoontz,* 22 Colo. 507, was *mandamus* to compel the Auditor to issue warrants for the payment of the salary of a steam boiler inspector. The legislature had in previous years made appropriations to pay the salary but failed to do so in 1893. The constitution provided that no money should be paid out of the treasury except on appropriation made by law and on warrant drawn by the proper officer in pursuance thereof; also that no warrant should be drawn by the Auditor or paid by the Treasurer unless the money has been appropriated by law, and the whole amount paid under one head should never exceed the amount appropriated by law for that purpose. The statute provided that the salaries of officers of the State should be paid monthly. The court held the statute creating the office and fixing the salary and providing that it be paid the same as other officers of the State constituted a continuing appropriation and that no further legislative action was necessary, and cited in support of its conclusion *Thomas* v. *Owens, supra,* and other cases.

Reliance is placed on *Fergus* v. *Russel,* 270 Ill. 304, wherein it was said the salaries of officers of the State government must be paid, and that the constitution makes it incumbent on the legislature to make appropriation for that purpose. There can be no doubt that it is the constitutional duty of the General Assembly to make appropriations to pay the salaries of officers of the State government. Sec-

tion 16 of article 4 of the constitution provides that bills making appropriations for pay of members and officers of the General Assembly and for salaries of officers of the government shall contain no provision on any other subject. Section 17 is in part as follows: "No money shall be drawn from the treasury except in pursuance of an appropriation made by law, and on the presentation of a warrant issued by the Auditor thereon; and no money shall be diverted from any appropriation made for any purpose, or taken from any fund whatever, either by joint or separate resolution." Section 18 requires each General Assembly to provide for all appropriations necessary for the ordinary and contingent expenses of the government until the expiration of the first fiscal quarter after the adjournment of the next regular session, the aggregate not to exceed the amount of revenue authorized by law to be raised in such time, and all appropriations shall end with such fiscal quarter. The intention of section 16 was to make appropriations to pay the members of the General Assembly and salaries of officers of the government a distinct subject for legislative action, separate and apart from appropriations for other purposes. (*Ritchie* v. *People,* 155 Ill. 98.) It is certain that the constitution prohibits any money being drawn out of the treasury except pursuant to an appropriation made by law for its payment. If, as we hold, the Governor had the constitutional power to veto the item for relator's salary in the bill making appropriations "for the pay of officers and members of the next General Assembly and certain officers of the State government," the situation is the same as if relator's salary had been omitted from the appropriation bill when it was passed. Then, unless an appropriation was made by some law to pay the salary, there was no fund upon which the Auditor could issue his warrant. It must be borne in mind that the statute fixing relator's salary and making it payable in monthly installments did not direct that it should be paid "out of any money in

the treasury not otherwise appropriated," as was the case in some of the decisions above referred to, but simply provided that it should be paid in monthly installments. Chapter 127 (State Finances) provides the fiscal year shall begin July 1 and end June 30. All money of the State paid into the treasury not belonging to any special fund shall constitute the general revenue fund. All appropriations, unless otherwise in the act specified, are required to be paid from the general revenue fund. Section 10 provides that "when an appropriation shall have been made by the General Assembly for the ordinary and contingent expenses" of operation of the State government, the Auditor of Public Accounts shall draw his warrant on the Treasurer for payment. Both the constitution and statutes are carefully intended to prevent any money being paid out of the treasury unless its payment has been previously authorized by law. Section 13 of the chapter on finances specifies and classifies the purposes for which appropriations are made, salaries being mentioned as the first class.

In *Myers* v. *English,* 9 Cal. 341, decided earlier than the California case cited by relator, which was *mandamus* to compel the payment of the salaries of State officers fixed by the constitution, the court referred to *Thomas* v. *Owens, supra,* but refused to follow it. The court said if the constitutional provision fixing the salary of an officer of the State government amounts to an appropriation for its payment, then a legislative appropriation to pay any salary fixed by the constitution or statute would not be necessary, and the constitutional provision that no money shall be drawn from the treasury but in consequence of appropriations made by law would be comparatively useless. The court referred to the reasoning in *Thomas* v. *Owens* that a view contrary to that decision would countenance a co-ordinate branch of the government stopping the whole machinery by refusing to appropriate money to pay the salaries of the officers on whom devolved the duties of the

departments of the government, and said: "It is very true that the legislature possesses the power to stop the whole machinery of government whenever it is willing to take the responsibility of doing so. That body might repeal all the existing laws and leave the people of the State practically without government for a time. So the legislature, under the constitution of this State, at one session can fix the compensation of members at the succeeding session, and this compensation, though merely nominal, cannot be increased by the incoming legislature. The legislature has the power to repeal all existing revenue laws and thus leave the State treasury without funds. The legislature has also the power of taxation to the extent of the value of all the property in the State. But with all due deference to the learned and distinguished jurists who decided the case of *Thomas* v. *Owens,* we are compelled to arrive at a different conclusion. We think the power to collect and appropriate the revenue of the State is one peculiarly within the discretion of the legislature. It is a very delicate and responsible trust, and if not used properly by the legislature at one session the people will be certain to send to the next more discreet and faithful servants. It is within the legitimate power of the judiciary to declare the *action* of the legislature unconstitutional where that action exceeds the limits of the supreme law, but the courts have no means and no power to avoid the effects of *non-action*. The legislature being the creative element in the system, its actions cannot be quickened by the other departments. Therefore, when the legislature fails to make an appropriation we cannot remedy that evil. It is a discretion specially confided by the constitution to the body possessing the power of taxation. There may arise exigencies, in the progress of human affairs, when the first moneys in the treasury would be required for more pressing emergencies and when it would be absolutely necessary to delay the ordinary appropriations for salaries. We must trust to the good faith and integ-

rity of all the departments. Power must be placed somewhere and confidence reposed in someone." While that decision is in conflict with the later case decided by the same court, we think its reasoning sound and prefer to follow it rather than the later case. The same court in *Stratton* v. *Green,* 45 Cal. 149, held a statute fixing an officer's salary and the time of its payment did not appropriate money to pay the salary.

*Shattuck* v. *Kincaid,* 31 Ore. 379, reviews most of the cases cited by relator but refused to follow them. There the salary was fixed by statute. The court said the object of the statute was accomplished when the salary and time of its payment were fixed; that no other or further intendment could be predicated on it; that it was not an appropriation of money to pay the salary, but something more was required to indicate a legislative intendment to effectuate an appropriation. The court said it was one thing to fix the amount and time of payment of a salary and quite another to provide and make available funds for its payment.

In *Menefee* v. *Askew,* 25 Okla. 623, the court considered the question whether a statute fixing the salary of game warden amounted to an appropriation for its payment. The court cited and reviewed the cases on the subject, and said it could not agree that the mere fixing of the salary and the periods at which it was payable manifested any intent to appropriate money to pay it. In Oklahoma the constitution contained a provision that no money should be paid out of the treasury pursuant to an appropriation made by law unless such payment be made within two and a half years after the passage of the appropriation act. The court said that provision clearly showed a continuing appropriation was not permissible under the constitution.

Under our constitution (section 18 of article 4) the period for which the General Assembly is required to make appropriations is "until the expiration of the first fiscal quarter after the adjournment of the next regular ses-

sion." In none of the cases holding the fixing of the salary and time for its payment amount to a continuing appropriation of money to pay it is any constitutional provision referred to placing any limit on the time for which appropriations may be made. The Supreme Court of Oklahoma held, and we think correctly, that under their constitution appropriations were only valid for two and a half years. Under our constitution all appropriations necessary for the ordinary and contingent expenses of the government lapse at the expiration of the first fiscal quarter after the adjournment of the next regular session of the General Assembly. A continuing appropriation beyond that period cannot be made by the General Assembly. There is nothing in the language of section 12 of the Inheritance Tax act to indicate that the legislature intended by it to appropriate money to pay relator's salary. It merely creates the office, fixes the salary and provides that it shall be paid in monthly installments. There is no provision in the act that the salary shall be paid in monthly installments "out of any money in the treasury not otherwise appropriated," which might afford a substantial basis for the claim that the act was an appropriation for payment of the salary when it became due for the period during which an appropriation might be made under our constitution, out of any money in the treasury not appropriated by law to some other purpose. But if the act had contained such a provision, it could not, under our constitution, have been a continuing appropriation beyond the period for which appropriations may be made. Furthermore, the constitution (section 16 of article 4) provides that bills making appropriations for the pay of members and officers of the General Assembly and for the salaries of the officers of the government shall contain no provision on any other subject. One of the contentions in *Fergus* v. *Russel, supra,* was that the meaning of that provision is that such bills shall contain no provision on any other subject than appropriations. The court said: "The lan-

guage employed in this section is plain and unmistakable and was clearly intended to prevent the making of appropriations for the pay of salaries of officers of the State government in any bill which should contain a provision on any other subject than that of appropriations for the pay of members and officers of the General Assembly and for salaries of officers of the State government. * * * Under this section of the constitution it is incumbent upon the General Assembly to make the appropriations for the pay of its members and officers and for the salaries of the officers of the State government by a separate bill or bills, which shall contain no provision on any other subject than that of appropriations for such members and officers." In that case it was held that an appropriation in the Omnibus bill for the pay of officers of the State government was invalid. Under the law announced in the *Fergus case,* if for no other reason, section 12 of the Inheritance Tax act could not be considered as making an appropriation to pay the salary of an officer of the State government, because it violated the constitutional provision above quoted in that it contained other subjects than an appropriation to pay the salary.

We have not referred to all the cases in which the subject here under consideration has been dealt with. They are by no means harmonious. Some of them involved salaries fixed by the constitution and some of them salaries fixed by statute, but we have given this case the consideration we thought its importance required, and our conclusion is that the act creating the office of relator and fixing his annual salary, which is payable in monthly installments, was not intended to be, and could not be, considered an appropriation of money to pay the salary; that even if it had been intended to be an appropriation, and its language was such that it could be so treated, the appropriation could not be a continuing one but would lapse at the end of the first fiscal quarter succeeding the adjournment of the next regular session of the General Assembly; and that

it could not be considered a valid appropriation for the period for which appropriations may be made because the bill or act embraced other subjects than an appropriation for pay of the salary.

The writ is denied.   *Writ denied.*