# Illinois Official Reports

## Appellate Court

---

**Illinois County Treasurers' Ass'n v. Hamer, 2014 IL App (4th) 130286**

---

| | |
|---|---|
| Appellate Court Caption | ILLINOIS COUNTY TREASURERS' ASSOCIATION, Plaintiff-Appellant, v. BRIAN HAMER, in His Official Capacity as Director of the Department of Revenue; and JUDY BAAR TOPINKA, in Her Official Capacity as Comptroller of the State of Illinois, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-13-0286 |
| Filed<br>Rehearing denied | April 22, 2014<br>June 12, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | When the General Assembly did not appropriate sufficient money to pay the Illinois county treasurers their annual stipends, the provision of the Illinois Constitution prohibiting the reduction of elected officials' salaries during their term of office was violated, and in the Illinois County Treasurers' Association's action to enforce payment of the stipends, the trial court's entry of summary judgment against the association on the ground that its action was barred by the separation of powers doctrine was reversed and the cause was remanded with directions to enter summary judgment for the association, since any county treasurer with a stipend unpaid during a term of office at issue in the action was constitutionally entitled to receive the stipends in full. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 10-MR-718; the Hon. John Schmidt, Judge, presiding. |

| Judgment | Reversed and remanded with directions. |
|---|---|
| Counsel on Appeal | R. Mark Mifflin, David A. Herman (argued), Christopher E. Sherer, and Melissa G. Steward, all of Giffin, Winning, Cohen & Bodewes, P.C., of Springfield, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and John P. Schmidt (argued), Assistant Attorney General, of counsel), for appellees. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Appleton and Justice Holder White concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiff, the Illinois County Treasurers' Association (Association), filed a complaint against defendants, Brian Hamer, Director of the Illinois Department of Revenue, and Judy Baar Topinka, Illinois Comptroller, alleging defendants violated Illinois law by failing to pay county treasurers the full amount of mandated annual stipends in 2010 and 2011 and seeking declaratory and *mandamus* relief. (Initially, the parties' pleadings named Topinka's predecessor, Daniel W. Hynes, as a defendant in the matter; however, the Association later filed a "suggestion of record" asserting Topinka became Illinois Comptroller as of January 10, 2011, and the matter proceeded against Topinka as a defendant.) Following the filings of cross-motions for summary judgment, the trial court granted summary judgment in favor of defendants. The Association appeals. We reverse and remand with directions.

¶ 2                                I. BACKGROUND

¶ 3    In Illinois, each county must elect a treasurer during general elections to serve a four-year term. Ill. Const. 1970, art. VII, § 4(c). Pursuant to the Illinois Counties Code (Counties Code), "[i]n addition to all other compensation provided by law, every elected county treasurer *** shall receive an annual stipend of *** $6,500 if his or her term begins December 1, 2000 or thereafter." 55 ILCS 5/3-10007 (West 2010). The statutory stipend is considered part of each county treasurer's salary. *Harlan v. Sweet*, 139 Ill. 2d 390, 396, 564 N.E.2d 1192, 1194 (1990). On December 1, 2010, all Illinois county treasurers began a new term.

¶ 4    On November 18, 2010, the Association filed its complaint against defendants, seeking declaratory and *mandamus* relief. It alleged its members were elected county treasurers in

Illinois who, pursuant to the Counties Code, were entitled to receive the annual $6,500 stipend as part of their salaries. The Association asserted, although the General Assembly appropriated sufficient funds to satisfy payment of the stipends in full, defendants failed to pay each county treasurer the full amount of his or her required stipend in fiscal year 2010 (July 1, 2009, through June 30, 2010). Instead, each county treasurer received a stipend of only $4,196. The Association further alleged that on July 13, 2010, each county treasurer received a letter from the Department of Revenue stating annual stipends would be further reduced to $2,600 in fiscal year 2011 (July 1, 2010, through June 30, 2011).

¶ 5    The Association maintained defendants' actions in fiscal year 2010, and intended actions in fiscal year 2011, violated article VII, section 9(b), of the Illinois Constitution (Ill. Const. 1970, art. VII, § 9(b)), which states "[a]n increase or decrease in the salary of an elected officer of any unit of local government shall not take effect during the term for which that officer is elected." In connection with its request for declaratory relief, the Association sought (1) a judgment declaring that defendants violated Illinois law and that any future payment to county treasurers of less than the statutorily mandated stipend would violate the Illinois Constitution and (2) an injunction ordering defendants to comply with the Counties Code and the Illinois Constitution. The Association also sought a writ of *mandamus* compelling defendants to (1) comply with section 3-10007 of the Counties Code and the Illinois Constitution and (2) authorize payment to, and pay, each county treasurer the full amount of his or her stipend for fiscal year 2010, and the full amount of the stipend to which he or she is entitled in the future.

¶ 6    Defendants filed answers and affirmative defenses to the Association's complaint, arguing, in part, that the Association's claims were barred by the separation of powers doctrine and sovereign immunity. With respect to their separation of powers defense, defendants claimed that (1) by law, the General Assembly is charged with making appropriations for all state expenditures of public funds (Ill. Const. 1970, art. VIII, § 2(b)), (2) the General Assembly failed to appropriate sufficient funds in fiscal years 2010 and 2011 to pay to county officials the amounts provided for in the Counties Code, and (3) pursuant to the separations of powers doctrine (Ill. Const. 1970, art. II, § 1), defendants had no power to direct, allocate, or otherwise authorize payment of money not appropriated by the General Assembly.

¶ 7    On July 10, 2012, the Association filed a motion for summary judgment, asking the trial court to enter judgment in its favor as to both its complaint and defendants' affirmative defenses. On August 14, 2012, defendants filed a cross-motion for summary judgment. On March 14, 2013, the trial court granted defendants' motion. The court determined the Association's claim was barred by the separation of powers doctrine and made a docket entry, stating "[t]he power to appropriate revenue for State Expenditures resides exclusively with the legislature and the Court has no authority to Order the Legislature to provide appropriation."

¶ 8    This appeal followed.

## II. ANALYSIS

¶ 10    On appeal, the Association argues the trial court erred in granting defendants' cross-motion for summary judgment. Specifically, it contends its claim is not barred by the separation of

powers doctrine. The Association argues that, contrary to defendants' arguments, the General Assembly did appropriate sufficient funds to pay the statutorily mandated stipends to county treasurers in fiscal years 2010 and 2011. Alternatively, citing the supreme court's decisions in *Jorgensen v. Blagojevich*, 211 Ill. 2d 286, 811 N.E.2d 652 (2004), and *Antle v. Tuchbreiter*, 414 Ill. 571, 111 N.E.2d 836 (1953), the Association contends that, even without a sufficient appropriation from the General Assembly, the courts have the power to compel payment when, as in this case, such an act is categorically commanded by statute or compelled by the constitution.

¶ 11 Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). "Where the parties file cross-motions for summary judgment *** they agree that only a question of law is involved, and they invite the court to decide the issues based on the record." *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 25, 979 N.E.2d 22. The trial court's ruling on a motion for summary judgment is subject to *de novo* review. *Linn v. Department of Revenue*, 2013 IL App (4th) 121055, ¶ 18, 2 N.E.3d 1203.

¶ 12 The separation of powers clause of the Illinois Constitution provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. The constitution further states that "[t]he General Assembly by law shall make appropriations for all expenditures of public funds by the State." Ill. Const. 1970, art. VIII, § 2(b). Thus, it is the legislative branch of government that is authorized to make appropriations and attempts to expend state funds without legislative appropriation "raise serious separation of powers problems." *McDunn v. Williams*, 156 Ill. 2d 288, 308, 620 N.E.2d 385, 396 (1993); see also *Board of Trustees of Community College District. No. 508 v. Burris*, 118 Ill. 2d 465, 479, 515 N.E.2d 1244, 1250 (1987) (stating the comptroller's disbursement of funds without legislative appropriation would " 'override' the action of the legislature and the Governor in making these reductions in an appropriations bill" and "creat[e] obvious problems under the separation of powers doctrine"); *American Federation of State, County & Municipal Employees v. Netsch*, 216 Ill. App. 3d 566, 568, 575 N.E.2d 945, 946 (1991) ("[A]ny attempt by the Comptroller to issue *** funds in the absence of an appropriation bill signed into law by the Governor would create obvious problems under the separation-of-powers doctrine.").

¶ 13 Initially, we address the parties' dispute over whether the legislature made sufficient appropriations for county treasurers' stipends during fiscal years 2010 and 2011. If sufficient appropriations were made, no separation of powers problem can be asserted by defendants.

¶ 14 Here, both the Association and defendants agree $663,000 was needed to fully fund county treasurers' stipends in each fiscal year. However, defendants point out the Department of Revenue had similar statutory obligations to other county officials, including county sheriffs (55 ILCS 5/4-6003(d) (West 2010)), coroners (55 ILCS 5/4-6002(c) (West 2010)), auditors (55 ILCS 5/4-6001(h) (West 2010)), supervisors of assessments (35 ILCS 200/3-40 (West 2010)), and assessment officials (35 ILCS 200/4-10, 4-15, 4-20 (West 2010)). They argue that the amount necessary to fully fund payment of the obligations owed to county officials in fiscal

year 2010 was $5,934,000 (representing $663,000 for treasurers' stipends; $663,000 for sheriffs' stipends; $663,000 for coroners' stipends; $660,000 for performance compensation to assessors; $350,000 for additional compensation for assessors; $2,825,000 for supervisors of assessment salaries; and $110,000 for auditors' stipends). Defendants maintain the amount necessary to fully fund statutory obligations in 2011 was $6,084,500.

¶ 15    Defendants argue the General Assembly appropriated only $3,830,500 during each fiscal year from which statutorily required payments to county officials could have been made, thereby necessitating reduced payments to all county officials. The Association counters that, although the General Assembly did not expressly designate funds for county treasurers' annual stipends, it appropriated lump-sum amounts totaling $33,813,900 in fiscal year 2010 and $116,791,800 in fiscal year 2011, from which the Department of Revenue could have fulfilled its statutory obligations to county officials.

¶ 16    With respect to county treasurers' stipends, the Counties Code provides as follows:

"In addition to all other compensation provided by law, every elected county treasurer, for additional duties mandated by State law, shall receive an annual stipend of *** $6,500 if his or her term begins December 1, 2000 or thereafter, to be annually appropriated from the General Revenue Fund by the General Assembly to the Department of Revenue which shall distribute the awards in annual lump sum payments to every elected county treasurer." 55 ILCS 5/3-10007 (West 2010).

¶ 17    In fiscal year 2010, the General Assembly made the following appropriations:

"ARTICLE 40

Section 5. The following named amounts, or so much thereof as may be necessary, respectively, for the objects and purposes hereinafter named, are appropriated from the General Revenue Fund to the Department of Revenue to meet its ordinary and contingent expenses for the fiscal year ending June 30, 2010:

OPERATIONS

For Personal Services
for Bargaining Unit Employees ...................71,191,200
For State Contributions to Social Security
for Bargaining Unit Employees ....................5,446,100

Section 10. The following named amounts, or so much thereof as may be necessary, respectively, for the objects and purposes hereinafter named, are appropriated from the General Revenue Fund to the Department of Revenue to meet its ordinary and contingent expenses for the fiscal year ending June 30, 2010:

OPERATIONS

For Personal Services
for Non-Bargaining Unit Employees ...............11,412,800
For State Contributions to Social Security
for Non-Bargaining Unit Employees ..................873,100

Section 15. The amount of $29,983,400, or so much thereof as may be necessary, is appropriated from the General Revenue Fund to the Department of Revenue to meet its operational expenses for the fiscal year ending June 30, 2010.

Section 25. In addition to other amounts appropriated, the amount of $3,830,500, or so much thereof as may be necessary, is appropriated from the General Revenue Fund to the Department of Revenue for operational expenses, awards, grants, and permanent improvements for the fiscal year ending June 30, 2010." Pub. Act 96-42, art. 40, §§ 5-25 (eff. July 15, 2009).

¶ 18 Similarly, in fiscal year 2011, the General Assembly appropriated funds as follows:

"ARTICLE 21

Section 5. The amount of $112,961,300, or so much thereof as may be necessary, is appropriated from the General Revenue Fund to the Department of Revenue to meet its operational expenses for the fiscal year ending June 30, 2011.

Section 6. In addition to other amounts appropriated, the amount of $3,830,500, or so much thereof as may be necessary, is appropriated from the General Revenue Fund to the Department of Revenue for operational expenses, awards, grants and permanent improvements for the fiscal year ending June 30, 2011." Pub. Act 96-956, art. 21, §§ 5-6 (eff. July 1, 2010).

Both Public Acts defined "operational expenses" to include "personal services." Pub. Act 96-42, art. 40, § 10 (eff. July 15, 2009); Pub. Act 96-956, art. 21, §§ 5-6 (eff. July 1, 2010).

¶ 19 Before the trial court and on appeal, defendants have taken the position that the stipends at issue are "awards" or "grants" and, therefore, could only be paid out of the $3,830,500 appropriated by the legislature in both fiscal year 2010 and 2011 "for operational expenses, awards, grants and permanent improvements." However, the Association contends the stipends could be paid out of funds appropriated for "operational expenses," which include "personal services." We agree with defendants.

¶ 20 Pursuant to the State Finance Act "awards and grants" include payments for "[a]wards and indemnities, pensions and annuities (other than amounts payable for personal services as defined in Section 14); shared revenue payments or grants to local governments or to quasi-public agencies; and gratuitous payments to, or charges incurred for the direct benefit of, natural persons who are not wards of the State." 30 ILCS 105/24.5 (West 2010). Further, section 14 of the State Finance Act (30 ILCS 105/14 (West 2010)) provides that "[t]he item 'personal services', when used in an appropriation Act, means the reward or recompense made for personal services rendered for the State by an officer or employee of the State or of an instrumentality thereof."

¶ 21 The Association argues county treasurers' stipends fall within the definition of "personal services." However, section 14 limits the "personal services" described therein as being rendered for the State by an officer or employee of the State or of a State instrumentality. The county treasurers at issue are county officers and not officers of either the State or one of its instrumentalities. Thus, their stipends do not fall within the definition of "personal services" and are, instead, included within the definition of "awards and grants." We note support for

- 6 -

this conclusion is also found in previous public acts, which set forth amounts appropriated for treasurers' stipends under the heading "Government Services Grants." See Pub. Act 94-798, art. 54, § 20 (eff. July 1, 2006); Pub. Act 94-15, art. 41, § 20 (eff. July 1, 2005).

¶ 22 We agree with defendants' position that the treasurers' stipends (and similar obligations to other county officials) could only have been paid out of the $3,830,500 appropriated by the legislature in both fiscal year 2010 and 2011 "for operational expenses, awards, grants and permanent improvements." Defendants have alleged, without any dispute from the Association, that it required appropriations in the amount of $5,934,000 in fiscal year 2010 and $6,084,500 in fiscal year 2011 to fulfill its statutory obligations. As a result, the record reflects amounts appropriated by the General Assembly in fiscal years 2010 and 2011 were insufficient to fulfill the Department of Revenue's statutory obligations to county officials.

¶ 23 We next address the Association's contention that, even without a sufficient appropriation from the General Assembly, payment of the stipends at issue can be compelled by the court. The Association cites the supreme court's decisions in *Jorgensen* and *Antle* to support its position. Conversely, defendants maintain state funds may not be disbursed without an appropriation from the General Assembly. They argue statutory provisions which set forth financial obligations do not constitute appropriations and argue the cases cited by plaintiff have no application to the facts presented here. In addressing these issues, we note the facts in this case implicate two competing constitutional requirements. Specifically, the Illinois Constitution provides both that (1) "[t]he General Assembly by law shall make appropriations for all expenditures of public funds by the State" (Ill. Const. 1970, art. VIII, § 2(b)) and (2) "[a]n increase or decrease in the salary of an elected officer of any unit of local government shall not take effect during the term for which that officer is elected" (Ill. Const. 1970, art. VII, § 9(b)).

¶ 24 In *Jorgensen*, 211 Ill. 2d at 287, 811 N.E.2d at 654, the issue before the supreme court was "whether the General Assembly and the Governor violated the Illinois Constitution when they attempted to eliminate the cost-of-living adjustments [(COLAs)] to judicial salaries provided by law for the 2003 and 2004 fiscal years." Similar to constitutional requirements in the case at bar, the Illinois Constitution prohibits the diminishment of judicial salaries during a judge's term of office. *Jorgensen*, 211 Ill. 2d at 287, 811 N.E.2d at 654 (quoting Ill. Const. 1970, art. VI, § 14). The court determined that COLAs had "been a fully vested component of judicial salaries in Illinois since 1990" and "efforts by the legislature and Governor to prevent the Judges from receiving them violated" constitutional provisions against the diminishment of judicial salaries. *Jorgensen*, 211 Ill. 2d at 307-08, 811 N.E.2d at 664-65. Ultimately, the court ordered payment of the judicial COLAs in both fiscal years 2003 and 2004. *Jorgensen*, 211 Ill. 2d at 316-17, 811 N.E.2d at 670.

¶ 25 In reaching its decision, the supreme court determined that it was "within the power of the judicial branch to compel the State to pay [judicial COLAs] without a specific appropriation for that payment." *Jorgensen*, 211 Ill. 2d at 314, 811 N.E.2d at 668-69. The court stated as follows:

> "The money to pay [fiscal year 2003] COLA has not been included in appropriations enacted by the General Assembly. The absence of such an appropriation, however,

cannot be invoked by the Comptroller to defeat the Judges' constitutionally protected right against reduction in their salaries. The State Comptroller Act provides that an obligation or expenditure must be 'pursuant to law and authorized' before the Comptroller may draw a warrant for its payment. 15 ILCS 405/9(b) (West 2002). In most instances the requisite authority is found in statutory enactments supported by relevant appropriations. Other types of 'obligational or expenditure authority,' however, will also suffice. See 15 ILCS 405/9(b), (c) (West 2002). In the case before us, that authority is furnished by a court order.

We repeat a point made earlier in this opinion. The Illinois Constitution of 1970 places the judicial power of government in the courts. See Ill. Const. 1970, art. VI, § 1. The judicial power includes 'all powers necessary for complete performance of the judicial functions.' [Citation.] Among those powers is the power to administer the court system. [Citations.] Indeed, article VI, section 16, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 16) expressly provides that '[g]eneral administrative and supervisory authority over all courts is vested in the Supreme Court.'

The court's administrative authority over the judicial branch carries with it the corresponding authority to require production of the facilities, personnel and resources necessary to enable the judicial branch to perform its constitutional responsibilities. That includes payment of the judicial salaries provided by law. There is no question that such authority must be invoked sparingly. The courts will normally defer to the other governmental branches having initial responsibility for providing the necessary funding. When those branches have failed to furnish resources essential to the court's operations, however, the judiciary may compel them to act through appropriate order. [Citation.]" *Jorgensen*, 211 Ill. 2d at 311-12, 811 N.E.2d at 667.

¶ 26    Defendants argue *Jorgensen* is not applicable to the facts presented by this case because the decision there was "premised upon the Illinois Supreme Court's administrative authority over the judicial branch of government under the Illinois Constitution and upon concerns unique to the judiciary." Clearly, the order at issue in *Jorgensen* was made "pursuant to the inherent right of the courts to order payment of judicial salaries"; however, in reaching its decision, the court also relied heavily on constitutional requirements. *Jorgensen*, 211 Ill. 2d at 315, 811 N.E.2d at 669 (stating the court's order was issued pursuant to the inherent right of the courts to order payment of judicial salaries which the state was constitutionally required to make). The court stated as follows:

"The executive branch, no less than the legislative branch, is bound by the commands of our constitution. The judicial power of the State of Illinois is vested in the courts (Ill. Const. 1970, art. VI, § 1), and it is the duty of the judiciary to construe the constitution and determine whether its provisions have been disregarded by either of the other branches of government. [Citations.] If officials of the executive branch have exceeded their lawful authority, the courts have not hesitated and must not hesitate to say so. [Citations.]" *Jorgensen*, 211 Ill. 2d at 310-11, 811 N.E.2d at 666.

The court additionally stated:

"Our court has held that '[w]here a statute categorically commands the performance of an act, so much money as is necessary to obey the command may be disbursed without any explicit appropriation.' *Antle v. Tuchbreiter*, 414 Ill. 571, 581[, 111 N.E.2d 836] (1953). If that is so with respect to statutorily mandated action, it is unquestionably so with respect to actions compelled by the constitution." *Jorgensen*, 211 Ill. 2d at 314, 811 N.E.2d at 668.

¶ 27    Further, "limitations written into the Constitution are restrictions on legislative power and are enforceable by the courts." *Client Follow-Up Co. v. Hynes*, 75 Ill. 2d 208, 215, 390 N.E.2d 847, 850 (1979). "It is the duty of the judiciary to construe the Constitution and determine whether its provisions have been disregarded by the actions of any of the branches of government." *Rock v. Thompson*, 85 Ill. 2d 410, 418, 426 N.E.2d 891, 896 (1981). "[T]he doctrine of separation of powers does not prevent the court from ascertaining compliance with or mandating performance of constitutional duties." *Rock*, 85 Ill. 2d at 417, 426 N.E.2d at 896.

"The separation of powers provision was not designed to achieve a complete divorce among the three branches of our tripartite system of government. [Citations.] Nor does it prescribe a division of governmental powers into rigid, mutually exclusive compartments. [Citations.] Because each branch of government is not required to exercise its powers in complete isolation of the other two branches, the separation of powers doctrine contemplates a government of separate branches having certain shared or overlapping powers. [Citations.] Thus, the decisions of this court recognize that the separation of powers provision does not prohibit every exercise of functions by one branch of government which ordinarily are exercised by another. [Citations.]" *People v. Walker*, 119 Ill. 2d 465, 473-74, 519 N.E.2d 890, 892 (1988).

¶ 28    Here, the constitution unquestionably prohibits increases or decreases to the salary of "an elected officer of any unit of local government *** during the term for which that officer is elected." Ill. Const. 1970, art. VII, § 9(b). County treasurers are elected county officers and subject to this constitutional provision. Ill. Const. 1970, art. VII, § 4(c). Additionally, the statutory stipend is considered a part of each county treasurer's salary. *Harlan*, 139 Ill. 2d at 396, 564 N.E.2d at 1194. Thus, decreases to a county treasurer's stipend during his or her term of office violate the constitution.

¶ 29    Further, given the supreme court's decision in *Jorgensen*, the duty of the judiciary to construe the constitution to determine whether its provisions have been violated, and the fact that judicial power includes all powers necessary for complete performance of judicial functions, it is within the power of the courts to compel payment of county treasurers' stipends *when the failure to pay stipends in the amount required by statute violates the constitution*. In this limited circumstance, a court order compelling payment without appropriation is not prohibited by the separation of powers doctrine but necessary to ensure compliance with constitutional requirements.

¶ 30    On appeal, defendants cite several cases to support their position that any additional payment of county treasurers' stipends for fiscal years 2010 and 2011 would violate the separation of powers doctrine. Specifically, defendants cite *People ex rel. Millner v. Russel*, 311 Ill. 96, 142 N.E. 537 (1924), *Quinn v. Donnewald*, 107 Ill. 2d 179, 483 N.E.2d 216 (1985),

and *Burris*, 118 Ill. 2d 465, 515 N.E.2d 1244, for the proposition that an appropriation by the General Assembly is necessary to disburse state funds even when a statutory provision establishes a fixed salary or other financial obligation. We find these cases distinguishable from the circumstances presented by this appeal.

¶ 31 In *Millner*, 311 Ill. at 98, 142 N.E. at 537, an assistant Attorney General filed a petition for a writ of *mandamus*, seeking to compel payment of his salary out of "money in the state treasury not otherwise appropriated." That case involved a statute creating the assistant Attorney General's position, fixing his annual salary, and directing that the salary be paid in monthly installments. *Millner*, 311 Ill. at 98, 142 N.E. at 537. Although the General Assembly initially appropriated sufficient funds to pay the salary as provided by statute, the Governor vetoed the appropriation. *Millner*, 311 Ill. at 97-98, 142 N.E. at 537. The supreme court denied the writ, holding the statute fixing the assistant Attorney General's salary "was not intended to be, and could not be, considered an appropriation of money to pay the salary." *Millner*, 311 Ill. at 112, 142 N.E. at 542.

¶ 32 In *Donnewald*, 107 Ill. 2d at 183, 483 N.E.2d at 218, the plaintiffs sought a declaratory judgment holding the Compensation Review Act (Act) (Ill. Rev. Stat., 1984 Supp., ch. 63, ¶¶ 901 to 906) violated the Illinois Constitution and enjoining the State Treasurer and Comptroller from expending public funds pursuant to that Act. The Act created the Compensation Review Board (Board), "the function of which [was] to recommend to the General Assembly the compensation for members of the General Assembly, judges, elected constitutional officers, and certain appointed officers of the State." *Donnewald*, 107 Ill. 2d at 183, 483 N.E.2d at 218. In finding the plaintiffs failed to meet their burden in challenging the constitutionality of a statute, the supreme court rejected their contention that a section of the Act, providing that " '[t]he General Assembly shall appropriate the funds necessary to pay the salaries set by the Board,' " was unconstitutional because it conferred on the Board the power to make appropriations. *Donnewald*, 107 Ill. 2d at 191, 483 N.E.2d at 222 (quoting Ill. Rev. Stat., 1984 Supp., ch. 63, ¶ 906). The court stated as follows:

"We agree *** with the trial court's sensible construction that 'shall' means simply that an appropriation bill is necessary, as it is in any other instance where State funds are to be disbursed. To interpret the quoted language as an open pledge or commitment by the General Assembly to make appropriations in the future would be clearly unreasonable." *Donnewald*, 107 Ill. 2d at 191, 483 N.E.2d at 222.

¶ 33 Finally, in *Burris*, 118 Ill. 2d at 468, 515 N.E.2d at 1245, the board of trustees for a community college district brought an action seeking reimbursement under the State Mandates Act (Ill. Rev. Stat. 1983, ch. 85, ¶¶ 2201 to 2210) for funds it expended for veterans' scholarships during fiscal years 1982 and 1983. The supreme court held the Comptroller properly refused to pay the plaintiff's claims where sufficient appropriations had not been made. *Burris*, 118 Ill. 2d at 478, 515 N.E.2d at 1250. The court stated as follows:

"[B]oth the legislature and the Governor intended that the funding for the scholarships be reduced and that the colleges be responsible for the difference in costs. If we accepted the plaintiff's view, the Comptroller, in essence, would be able to 'override' the action of the legislature and the Governor in making these reductions in an

appropriations bill, creating obvious problems under the separation of powers doctrine. *** The disbursement of funds would frustrate the clear legislative intent to reduce the appropriation for this scholarship program. The Comptroller acted properly in refusing to disburse the funds claimed by the College." *Burris*, 118 Ill. 2d at 479, 515 N.E.2d at 1250-51.

¶ 34    We do not disagree with the results in *Millner*, *Donnewald*, or *Burris*, or the general propositions set forth therein. However, we find those cases are distinguishable and fail to address the precise factual circumstances presented by the case at bar. In addition to obvious factual dissimilarities, none of the cases cited by defendants involved the violation of an explicit constitutional requirement as a result of insufficient appropriations. Here, the practical effect of the failure to appropriate sufficient funds was the diminishment of treasurers' salaries during the treasurers' terms of office, which, as discussed, violated article VII, section 9(b), of the Illinois Constitution.

¶ 35    Additionally, defendants cite this court's decision in *Russell v. Blagojevich*, 367 Ill. App. 3d 530, 853 N.E.2d 920 (2006), noting it was decided after *Jorgensen* and asserting we "recognized the continuing viability of *Burris* and the general rule that legislative appropriations are necessary to permit an expenditure of State funds." In *Russell*, the plaintiff was a former State's Attorney who filed a *mandamus* complaint, asserting that, like the judges at issue in *Jorgensen*, he was improperly denied the COLA provided for by law in fiscal year 2003. *Russell*, 367 Ill. App. 3d at 532, 853 N.E.2d at 923. The trial court dismissed the plaintiff's complaint, and we affirmed. *Russell*, 367 Ill. App. 3d at 530, 853 N.E.2d at 921.

¶ 36    Although we cited *Burris* for the proposition that the General Assembly must make an appropriation prior to the payment of state funds, we also noted that, "in *Jorgensen*, the supreme court gave authorization by court order to the Comptroller to issue warrants drawn on the treasury of the State of Illinois to pay the judges." *Russell*, 367 Ill. App. 3d at 537, 853 N.E.2d at 927. We went on to distinguish that case and *Burris* from *Jorgensen* on the basis that, unlike in *Jorgensen*, there had been no constitutional violation, stating as follows:

    "In the instant case, as in *Burris* and unlike *Jorgensen*, there is no constitutional prohibition to the diminishment of a State's Attorney's salary. Further, if the Comptroller were to make the payments as plaintiff requests, he would, as was the case in *Burris*, 'override' the action of the General Assembly *without a constitutional mandate*.

    Because *** the Illinois Constitution contains no prohibition against increases or decreases in a State's Attorney[s'] salary, [the] denial of a COLA to plaintiff is not unconstitutional." (Emphasis added.) *Russell*, 367 Ill. App. 3d at 538, 853 N.E.2d at 927.

¶ 37    Again, this case, like *Jorgensen*, involves a constitutional prohibition against increases or decreases in treasurers' salaries. As a result, this case is factually similar to *Jorgensen* and unlike the cases relied upon by defendants.

¶ 38    Here, we note all Illinois county treasurers began a new term of office on December 1, 2010, and the previous four-year term for treasurers was December 1, 2006, through

- 11 -

November 31, 2010. The decrease in stipends in fiscal years 2010 and 2011 was only unconstitutional with respect to those treasurers holding office from December 1, 2006, to November 31, 2010. Specifically, the decrease in fiscal year 2010 stipends took effect on July 15, 2009, when Public Act 96-42 (setting forth appropriations for fiscal year 2010) became effective. Thus, the decrease in stipends for fiscal year 2010 occurred during treasurers' December 2006 to November 2010 term of office and violated article VII, section 9(b) of the Illinois Constitution. Ill. Const. 1970, art. VII, § 9(b). Payment of those stipends in full may be compelled by court order.

¶ 39    The decrease in stipends for fiscal year 2011 (under Public Act 96-956) became effective on July 1, 2010. Therefore, it also impermissibly constituted a decrease in treasurers' salaries during the treasurers' December 2006 to November 2010 terms of office. Payment of fiscal year 2011 stipends for treasurers holding office from December 2006 to November 2010 may also be compelled. However, because the fiscal year 2011 decrease occurred prior to, and not during, county treasurers' terms of office that began on December 1, 2010, no constitutional violation occurred and payment to those treasurers may not be compelled by court order.

¶ 40    On appeal, defendants assert sovereign immunity also provides a sufficient basis to support the trial court's grant of summary judgment in their favor. The Illinois Constitution provides that "[e]xcept as the General Assembly may provide by law, sovereign immunity in this State is abolished." Ill. Const. 1970, art. XIII, § 4. Thereafter, "the General Assembly reestablished sovereign immunity in the State Lawsuit Immunity Act." *PHL, Inc. v. Pullman Bank & Trust Co.*, 216 Ill. 2d 250, 260, 836 N.E.2d 351, 356 (2005) (citing 745 ILCS 5/0.01 *et seq.* (West 1998)). Section 1 of the State Lawsuit Immunity Act provides that the State shall not be made a defendant or party in any court "[e]xcept as provided in the Illinois Public Labor Relations Act, the Court of Claims Act, the State Officials and Employees Ethics Act, and Section 1.5 of this Act." 745 ILCS 5/1 (West 2010). The Court of Claims Act then provides that the Court of Claims "shall have exclusive jurisdiction to hear and determine *** [a]ll claims against the State founded upon any law of the State of Illinois or upon any regulation adopted thereunder by an executive or administrative officer or agency." 705 ILCS 505/8(a) (West 2010).

¶ 41    However, one exception to the sovereign immunity doctrine is the "officer suit" exception, which applies when there is an action against a state officer based on allegations that he or she, while claiming to act for the State, enforces an unconstitutional act or acts beyond his or her authority. *PHL*, 216 Ill. 2d at 261, 836 N.E.2d at 357. In such instances, the suit is not against the State. *PHL*, 216 Ill. 2d at 261, 836 N.E.2d at 357. The exception is based on the presumption that " 'the State, or a department thereof, will not, and does not, violate the constitution and laws of the State, but that such violation, if it occurs, is by a State officer or the head of a department of the State, and such officer or head may be restrained by proper action instituted by a citizen.' " *PHL*, 216 Ill. 2d at 261, 836 N.E.2d at 357 (quoting *Schwing v. Miles*, 367 Ill. 436, 441-42, 11 N.E.2d 944, 947 (1937)).

¶ 42    Recently, in *Wilson v. Quinn*, 2013 IL App (5th) 120337, ¶ 19, 1 N.E.3d 586, the Fifth District determined the "officer suit" exception applied in a case factually similar to the case at bar. There, the plaintiffs were two Illinois county sheriffs who filed an action in the circuit court against the Governor, "seeking a judgment declaring that the failure of the Governor to

authorize full payment of a statutorily mandated annual stipend in 2010 was contrary to the law and the constitution of Illinois." *Wilson*, 2013 IL App (5th) 120337, ¶ 1, 1 N.E.3d 586. Ultimately, the circuit court granted the Governor's motion to dismiss, finding the plaintiffs' action barred by the State Lawsuit Immunity Act. *Wilson*, 2013 IL App (5th) 120337, ¶ 1, 1 N.E.3d 586.

¶ 43　　　　The Fifth District reversed and remanded. *Wilson*, 2013 IL App (5th) 120337, ¶ 1, 1 N.E.3d 586. It considered the allegations in the plaintiffs' complaint, stating they asserted "that the Governor failed to authorize full payment of the 2010 stipend as mandated in section 4-6003(d) of the Counties Code [(55 ILCS 5/4-6003(d) (West 2010))], and that the Governor thereby violated the law and article VII, section 9(b), of the Illinois Constitution [(Ill. Const. 1970, art. VII, § 9(b))]." *Wilson*, 2013 IL App (5th) 120337, ¶ 16, 1 N.E.3d 586.

¶ 44　　　　The Fifth District also considered the relief requested, noting "[t]he plaintiffs have prayed for a judgment declaring that the Governor acted in violation of the Illinois Constitution and section 4-6003(d) of the Counties Code when he failed to authorize full payment of their annual stipend for 2010, and that they are entitled to receive the full amount of the 2010 stipend, their costs, and other fair and equitable relief." *Wilson*, 2013 IL App (5th) 120337, ¶ 17, 1 N.E.3d 586. The court pointed out that the plaintiffs did not allege "statutory violations as a predicate for imposing liability in contract or in tort on the State of Illinois" and, instead, "asked for a declaration that the Governor has failed and continues to fail to do what the law requires." *Wilson*, 2013 IL App (5th) 120337, ¶ 17, 1 N.E.3d 586. Finally, it determined the plaintiffs' complaint contained "sufficient factual allegations to satisfy the necessary elements for *mandamus* relief." *Wilson*, 2013 IL App (5th) 120337, ¶ 18, 1 N.E.3d 586.

¶ 45　　　　Based upon those circumstances, the Fifth District determined "[t]he factual allegations in the plaintiffs' complaint [were] sufficient to establish jurisdiction in the circuit court under the 'officer suit' exception to the doctrine of sovereign immunity and to support the remedy of *mandamus*." *Wilson*, 2013 IL App (5th) 120337, ¶ 19, 1 N.E.3d 586. We find the facts presented by this case are similar. The Association raises similar allegations and requests the same relief. For the same reasons set forth in *Wilson*, we also find the "officer suit" exception to the doctrine of sovereign immunity applies. As a result, defendants were not entitled to summary judgment on that asserted basis.

¶ 46　　　　Here, the trial court erred by granting summary judgment in favor of defendants on the basis that the Association's claims were barred by the separation of powers doctrine. In this instance, the General Assembly failed to appropriate sufficient funds to fulfill the Department of Revenue's statutory obligations to county officials, including county treasurers' stipends and the failure to pay those obligations violated constitutional provisions prohibiting decreases in the salary of "an elected officer of any unit of local government *** during the term for which that officer is elected" (Ill. Const. 1970, art. VII, § 9(b)). As stated, however, no constitutional violation occurred with respect to treasurers' terms of office which began December 1, 2010, as the decrease in stipends for fiscal year 2011 became effective prior to that date. Thus, each county treasurer (serving an elected term from December 1, 2006,

through November 31, 2010) was constitutionally entitled to receive fiscal year 2010 stipends in full and his or her *pro rata* share of the full amount of fiscal year 2011 stipends.

¶ 47 In this instance, the record reflects the Association, and not defendants, was entitled to summary judgment. We reverse the trial court's judgment, granting summary judgment in favor of defendants, and direct it to enter summary judgment in favor of the Association consistent with this decision.

¶ 48                                    III. CONCLUSION

¶ 49 For the reasons stated, we reverse the trial court's judgment and remand with directions that it enter summary judgment in favor of the Association consistent with this decision.

¶ 50 Reversed and remanded with directions.